1831.

Eager
v.
Price.

---

## Eager and others vs. Price and others.

A supplemental bill cannot be filed without a previous order of the court giving permission. But such order may be granted on an ex parte application.

Where an injunction is asked for on a supplemental bill a copy of the bill is usually served on the party, if he has appeared in the cause, together with a notice of the application. And if the court makes an order for the injunction, leave to file the bill is necessarily implied in such order.

On an ex parte application to file a supplemental bill, the court only examines the question so far as to see that the privilege is not abused for the purposes of delay and vexation to the defendant.

In a doubtful case the court may direct notice of the appilcation to be given to the defendants who have appeared.

Where an original bill was properly filed by a creditor for to reach the property of the defendant after the return of an execution unsatisfied, *held* that a supplemental bill was proper to reach subsequently acquired property to satisfy the same debt.

The court will not permit a party to file two original bills, and carry on two suits at the same time against the defendant to satisfy the same debt.

The judgment creditor only acquires a specific lien upon the equitable property which belonged to the defendant at the the time of filing his bill, or upon the proceeds thereof. If he wishes to obtain a priority as to subsequently acquired property, he must file a supplemental bill.

The court will not permit supplemental bills to be filed in such a case, mere-; ly to harass the defendant, or to deprive him and his family of his daily earnings.

If a supplemental bill is unnecessarily or improperly filed, it may be dismiss-. ed at the hearing, although the defendant obtains a decree on the original bill.

Upon a judgment creditor's bill the complainant may reach the defendant's interest in the effects of a copartnership, after payment of the partnership debt and satisfying all prior equities in favor of his copartners.

The policy of the present laws of this state is to relieve the unfortunate debt-. or from imprisonment; but, at the same time, to compel him to surrender up all his property and effects, or so much thereof as is necessary to satis-fy the just claims of his creditors. And the court of chancery will not per-mit him, by any shift or device, to place his property beyond their reach;

THE complainants, being judgment creditors of the defend-ant Price, filed their bill before the Vice chancellor of the first circuit to obtain satisfaction of their debt out of his equita-ble property. And the usual injunction was granted thereon. Price demurred to the bill, which demurrer on argument was overruled. From that decision he appealed to the chancel-lor; which appeal has not yet been disposed of. The com-plainants afterwards prepared a supplemental bill, setting forth those proceeding, and showing among other things that since the filing of the original bill, Price had become the owner of 250 shares in the stock of the Harlæm Canal Com-pany, the par value of which was $50 a share; and that since the filing of the original bill he had also received up-wards of $2000 in money from another source. Price and the Harlæm company were made defendants in the supple-mental bill. This bill prayed for an injunction to restrain Price from selling or assigning the stock, and the company from permitting a transfer thereof; and that the same might be sold, and applied to the satisfaction of the complainants' judg-ment. An ex parte application for the injunction having been made to the vice chancellor, he directed notice thereof to be given to the defendant Price, which was done accord-ingly. On the hearing of the parties before court, the motion for the injunction was denied with costs. From that decision the complainants applied to the chancellor.

*H. Bleecker*, for the appellant.

*D. Selden*, for Price the respondent.

THE CHANCELLOR. The objection that the supplemental bill was filed without a previous order does not appear to be a valid answer to the application. There was no necessity of filing it previous to the argument of the motion, unless the vice chancellor intended to direct an order to show cause why the injunction should not be granted; which does not appear to have been intended. But if there was sufficient in the bill to authorize the granting of the injunction, it would then have been filed as a matter of course; as the injunction could not issue until the bill was actually filed. If the injunction was proper, the fact that the complainants had through inadvertence, placed their bill on file a few days too soon, would afford no ground for refusing the application then made. If they showed a case entitling them to an injunction on the supplemental bill, the order for leave to file the bill was a matter of course; and, if necessary, the complainants should have been permitted to re-file it, as of that time.

No reasons are stated for the refusal of the application; but I presume the vice chancellor did not suppose it was necessary for the complainants to get an order for leave, and actually file the supplemental bill, before notice of the motion could be given. The usual practice is to serve a copy of the supplemental bill on the defendant who has appeared in the cause, together with a notice that the court will be applied to, upon such bill, for an order that an injunction issue according to the prayer thereof. If the injunction is allowed, the leave to file the bill is always implied in the order, if it is not stated in express terms. Although a party may not file a supplemental bill without permission of the court, leave is usually granted on an ex parte application. If there is probable cause for filing it, the leave will be granted of course, and the court only examines the question so far as to see that the privilege is not abused for the purposes of delay and vexation to the defendant. And in a case of doubt, the court may direct notice of the application to be given to the defendants who have appeared.

The affidavit of the defendant Price that the stock which he had acquired in the canal company was partnership prop-

erty, in which another person was interested, and that the stockholders are personally liable for the debts of the company, could furnish no valid objections to the granting of the injunction. If it is unsafe even for this insolvent defendant to continue to hold the stock in his own name, he may apply to the court for leave to have it sold at auction, or otherwise, and to have the proceeds brought into court, or safely invested in some other way to abide the decision in the cause, or until it shall be ascertained to whom the proceeds will eventually belong. The provisions of the revised statutes for the protection of creditors would be rendered perfectly nugatory if an insolvent debtor could place his property beyond their reach, by entering into a copartnership and vesting all his effects in that concern. Where there is a bona fide copartnership, in which the judgment debtor has an interest, the claims of the creditors of the firm to priority of payment out of the partnership effects, and the equitable rights of the several partners, as betwen themselves, will all be preserved. But if there is a surplus belonging to the debtor, after satisfying all prior equities, his separate creditors are entitled to the aid of this court to reach that surplus; so that it may be appropriated to the payment of their just claims against him as an individual. And he will not be permitted, under pretence of preserving the rights of his co-partners, or of the creditors of the firm, to go on and appropriate the property to his own use. From another case recently before me, it is known to the court that these same complainants are also proceeding against the alleged partner of this defendant to obtain satisfaction of a separate debt against him. And that he also makes the same objection that he is afraid the creditors of the firm may be injured, or the rights of his co-partner violated, if he is restrained from disposing of his interest in this stock. The policy of the law is to relieve the unfortunate debtor from imprisonment; but at the same time to compel him to surrender up his property and effects of every description, or so much thereof as is necessary to satisfy the just claims of his creditors who may be equally unfortunate with himself in having placed their property in his hands. And while I have the honor of a seat here, this court will

endeavor to carry the law into effect according to its spirit and intent. The court will, as far as possible, prevent the expense of useless litigation, and protect the really unfortunate against the oppression of their creditors under the forms of law; but will never permit the fraudulent debtor, by any shift or device, to place a part of his property beyond the reach of his creditors. When the man who has lived in ease or affluence becomes insolvent, either by the vicissitudes of fortune, or by his own improvidence, he must learn to recollect and to feel that the property in his possession belongs to his creditors in equity, and not to himself or to his family; and that it is his duty as an honest man to see that it is preserved and faithfully applied to the payment of his debts. If he suffers it to be wasted in useless litigation it is generally his own fault; for he has a perfect right, before any one has acquired a priority of lien, to assign and deliver over the whole at once, either to the creditors themselves, if they will accept it, or to some faithful and responsible trustee for the payment of all his debts, rateable. He may even give a preference to favorite creditors if he chooses to waive the benefit of a discharge under the insolvent acts.

As it appears from the supplemental bill that the stock in question was acquired since the commencement of the suit, if the demurrer to the original bill was properly overruled by the vice chancellor, it seems to follow that this bill is necessary and proper; and that the injunction should have been granted as prayed for therein. If the original bill is defective in substance, so that no decree thereon could have been made at the hearing, the supplemental bill must necessarily fall with it, as the latter is but a continuation of the same suit. But if the complainants were right in filing the original bill, a supplemental bill seems to be the proper mode of reaching subsequently acquired property of the defendant; although in relation to its immediate object, and against the Harlæm Canal Company, it may in some respects be in the nature of an original bill, notwithstanding it is supplemental as to the former proceedings.

This species of bill is recognized by Lord Redesdale as a proper mode of bringing newly acquired interests of the par-

ties, but relating to the same subject before the court. (Mitf. Plead. Amer. ed. 49, 50 ; 4 Lond. ed. 63.) If the defendant at the commencement of the suit has property, of the value of one hundred dollars and upwards, which the complainant has a right to have applied in satisfaction of his judgment, by the aid of this court, he has right to file his bill for that purpose. He thereby acquires a specific lien on that property, which entitles him to a priority of payment out of that fund ; subject however to all prior equities which existed against the same at the time of the commencement of his suit in this court. Although as against the defendant himself he might also obtain a decree, which would give him the benefit of all other property which belonged to the defendant at the time the decree was obtained, yet the original injunction does not restrain the defendant from using or disposing of property which has been subsequently acquired, if it is not the proceeds or produce of that which belonged to the defendant at the time the injunction was obtained. If another bill was filed by the second judgment creditor, the latter would obtain a priority as to the newly acquired property. So also a bona fide purchaser, or another creditor, to whom it has been assigned in payment of a debt, would be permitted to hold it against the creditor who had filed his bill before the acquisition of that property. If therefore became necessary for the complainants in this case, either to file a supplemental bill to reach this stock and protect it by injunction, or to commence a new suit for that purpose. The expense of a supplemental bill is but trifling, when compared with that of an original suit. And this court certainly would not, except in a case of absolute necessity and to prevent a failure of justice, allow two original suits to be commenced, and carried on at the same time, between the same parties, to obtain satisfaction of the same debt. I think therefore this was a proper case for a supplemental bill, and that the injunction should have been granted as prayed for therein.

As the costs of the complainants, both an original and supplemental bills, are entirely in the discretion of the court, they would not be permitted to abuse the privilege by harassing an unfortunate debtor with supplemental bills, having no oth-

er object than to deprive the family of the defendant of the fruits of his daily earnings, or to multiply costs. And if a supplemental bill is unnecessarily or improperly filed, it may be dismissed at the hearing, although the complainant obtains a decree on the original bill.

The decision of the vice chancellor must be reversed, and an injunction must issue, according to the prayer of the supplemental bill; and Price, the respondent, must pay to the appellants their costs on this appeal, to be taxed. The proceedings must be remitted to the vice chancellor that the injunction may be issued accordingly; and that such further proceedings may be had before him as may be necessary to carry into effect this decision.