BARRICLO *vs.* THE TRENTON MUTUAL LIFE AND FIRE INSU-
RANCE COMPANY.

Matters which are known to complainant before the decree in the original suit will not support a supplemental bill; nor will matters which have arisen since, if they are merely cumulative evidence of the charges in the original bill.

Barriclo *v.* Trenton Mutual Life and Fire Insurance Co.

That a supplemental bill is filed without authority of the court is not matter of demurrer, though it may on that ground, in the discretion of the court, be dismissed.

The supplemental bill in this case held to be multifarious.

*William Halsted,* for complainant.

*Beasley,* for defendants.

THE CHANCELLOR.   The original bill in this cause was filed on the 11th of May, 1852, against the Trenton Mutual Life and Fire Insurance Company.   The only parties defendants to the bill were the company, its president and treasurer.   The proceeding was instituted under the act to prevent frauds by incorporated companies.   The bill was filed by a creditor and stockholder of the company, and prayed, among other things, that the company might be declared insolvent, that they might be restrained by injunction from exercising their corporate franchises, and that a receiver might be appointed to wind up its concerns.   Upon an application for an injunction, at May term, 1852, the Chancellor held, that upon the case made by the pleadings and proofs the insolvency of the company was not established, and the motion for an injunction was denied.   The grounds of that opinion appear in the report of the case in 1 *Stockton* 95.

On the 15th of July, 1852, the complainants filed an amended bill.   It prayed (1) that a full discovery may be made of the business transactions and property of the company, including its guarantee capital; (2) that the creditors may be paid what was justly due, and the policy holders protected in their just rights; (3) that the company and its officers may be enjoined from collecting the debts or exercising the franchises of the corporation; (4) that a receiver may be appointed, and that the property and funds of the company may be brought into court, and disposed of under the order of the court; (5) and that the books of the company may be brought into court for in-

spection and examination in proof of the charges of the bill.

At May term, on the 18th of July, 1853, the cause having been brought to hearing upon the pleadings and proofs, the Chancellor declared his opinion that the company was insolvent, but declined to appoint a receiver. The management was left in the hands of the directors of the company, who were required, in closing its affairs, to act under the immediate control and direction of the court.   The same duties were imposed upon them as are required of receivers under the 11th section of the act referred to.   See 1 *Stockton* 347.

By a decretal order, made on the 18th of June, 1853, the company was declared insolvent under the provisions of the statute, and were required to make and exhibit to the court an inventory of all their property and of the debts due to and from the company, and to make report of their proceedings to the court every six months thereafter.

The supplemental bill, after reciting the charges and prayer of the amended bill, gives, by way of supplement, a detailed history of various steps in the progress of the cause since the 18th of July, 1853.   It exhibits statements, made from time to time by the directors, of the affairs of the company.   It gives a detailed statement, from the report of the directors, of the amount of the guarantee capital of the persons by whom it is held, and the amounts held by them respectively, of the amounts of interest paid thereon, of the securities given for this capital, and of the withdrawal of certain securities, and the substitution of others, from time to time made in lieu thereof.   It states that admitted claims against the company had been purchased up by the directors and others associated with them as joint purchasers of such claims, and that, under a report of one of the masters of the court, it was held by the master that such claims should be held only for the amount paid therefor, and that, in the distribution of the assets of the company, they should have only a *pro rata* dividend on such amount.

Various charges of fraudulent conduct are made against the directors, and it is alleged, in general terms, that facts which have come to light, and information received since the filing of the original bill, make it apparent that the company was insolvent prior to the filing of the original bill, and that the fact was known to the directors.

It charges that a part of the guarantee capital had been illegally assigned by the directors to themselves and others, and insists that the directors and others by whom such guarantee capital was deposited should be estopped from denying that it constitutes a part of the assets of the company for the payment of losses. It insists that the contributors to the guarantee capital ought to be personally charged with the amount of such guaranty, even if a recovery upon the security itself is barred.

The bill prays—(1) that the company may be enjoined from collecting any of its debts or from exercising any of its franchises; (2) that a receiver may be appointed to collect and take into possession all the debts and property belonging to the corporation at the time of their suspending business; (3) that the directors of the company, by whose authority or consent the securities deposited with the treasurer of the company as guarantee capital was given up, be decreed to replace the same, or to be personally liable for the amounts so withdrawn, and that the other defendants may be decreed to replace the securities by them withdrawn from the hands of the treasurer of the company under authority or pretence of a resolution passed at a meeting of the company in April, 1851, or may be decreed to be personally liable for the amount thereof by them respectively received, with interest, and that they may be decreed to repay to the company the amounts respectively received by them as interest upon such guarantee capital; that the guarantee capital may be decreed to be assets, and liable to be assessed for its *pro rata* share of the debts and losses of the company, and that the bonds and securities substituted by order of the

Chancellor, in lieu of the securities originally given as a capital, be in like manner appropriated and distributed under the decree of the court.

The bill is essentially vicious both in its frame and design. It is in no sense a supplemental bill nor a bill in the nature of a supplemental bill. It is not in aid of the original bill. It seeks a different object; it introduces new parties; it reports new facts, charges, and specifications having no connection with the purpose of the original bill.

The design of the original bill was to have the insurance company declared insolvent, a receiver appointed, and its affairs wound up under the direction of the court. Relief was sought against the corporation alone at the hands of its creditors.

The sole design of the present bill is to establish the claims of the corporation against persons alleged to be its debtors or against its officers who have made themselves liable by their fraudulent conduct. Its sole design is to have the guarantee capital declared to be assets for the payment of the debts of the company; to have the directors who parted with the securities constituting such guarantee capital, and the parties who received them from the treasurer liable therefor, and also liable for such interest as they may have respectively received upon such guarantee capital when in the hands of the treasurer. I say this is the sole design of the supplemental bill, for it is manifest that the prayer for an injunction and receiver has been or may be fully attained under the original bill, without the least reference to the supplemental matter.

In this light the bill is in no sense supplemental, but is a new bill for a new purpose against new parties; or if the bill, by reason of its formal prayer, may be deemed to include as well the purpose of the original bill as the additional purpose of securing the guarantee capital and interest thereon, the bill is bad for multifariousness.

It is a manifest attempt to unite with a bill by a credit-

or of an insolvent company for the settlement of its affairs under the provisions of the statute the settlement of disputed claims between the company and its officers, members, and debtors. Such discordant and dissimilar claims cannot be united in one suit.

The matters, moreover, which are introduced into the bill as supplemental are and were known to the complainant before the making of the decree in the original cause, or if they have arisen since, they are merely cumulative evidence in support of charges in the original bill, neither of which constitute proper matter of a supplemental bill. *Story's Eq. Pl.* § 328, § 332, § 337; *Mitford's Pl. by Jeremy* 61.

There are other matters in the bill which render it demurrable, but it is unnecessary to advert to them.

The objection that the bill was filed without the authority of the court is not matter of demurrer, though the bill upon that ground may, in the discretion of the court, be dismissed. *Eager* v. *Price*, 2 *Paige* 333; 1 *Hoffman's Ch. Prac.* 403; *Pedrick* v. *White*, 1 *Metcalf* 76.

The demurrer is sustained, and the bill dismissed.

I have arrived at this conclusion with the less reluctance because it is obvious that no possible advantage can accrue to the creditor from prosecuting the claim under this bill. Every possible advantage within the legitimate scope of the original bill can be more readily attained without the aid of the supplement. Every other object sought by the supplement can be more readily attained in another mode. This suit has already been pending nine years, and but little progress has been made towards the satisfactory adjustment of the rights of the creditors. This new bill, in the shape in which it is presented, would be the signal for more protracted controversy.

It is but just to all the parties that this controversy should be promptly closed, and I am disposed to afford all the aid in the power of the court to promote that end. The main question attempted to be raised by this bill, to

·wit, the validity of the guarantee capital in the hands of the company, has already been decided in this court. In *The Trenton Mutual Life and Fire Insurance Co.* v. *McKelway and others,* 1 *Beasley* 133, the late Chancellor, in an elaborate opinion, pronounced the contract upon which the securities were advanced to constitute the guarantee capital against public policy illegal and void. That suit was instituted for the foreclosure of one of the mortgages given as a part of the guaranty. I must assume, as the directors were acting as receivers under the authority of the court, that the suit was instituted under the sanction of the Chancellor for the express purpose of testing the question. In this view I should, sitting here, feel myself bound by it, and so far as this case is concerned, that question should be considered as at rest. The bill, however, was dismissed without prejudice to the claim of the complainants for interest advanced to McKelway upon the contract.

By an order in the cause, made on the 3d of December, 1858, the Chancellor, while denying an application for an attachment against the contributors to the guarantee capital for not paying the interest, gave leave to counsel to institute such suit as he might be advised against the contributors to recover the interest. That question is therefore an open one, which should be at once disposed of. It was intimated, upon the argument, that the decision upon the validity of the guarantee capital in the suit against McKelway was not satisfactory, and that counsel desired the question to be reviewed. If so, it should be done not in this court but in the Court of Appeals. No appeal was taken from the decree in favor of McKelway.

If the directors fail to take prompt steps to have the question regarding the claim for interest and any other question in the way of a settlement finally adjudicated, I will entertain an application for the appointment of a receiver.

If the securities advanced as the guarantee capital belong to the company they should be collected and applied to the payment of its policies. If the contract is void, as has been decided by the Chancellor, the securities should be returned to their owners, and not kept locked in the vaults of this court.

The interest of a parties demand all prompt adjustment of this controversy.