MUMFORD SMITH and others *v.* ST. LOUIS MUTUAL LIFE
INSURANCE COMPANY and others.

## October Term, 1877.

CHANCERY JURISDICTION OVER PROPERTY, IN THIS STATE, OF A FOREIGN CORPORATION. — The Chancery Courts of this state have jurisdiction to wind up the business of a foreign corporation because of its insolvency and non-user of its franchises, and declare its property in this state a trust-fund for creditors, and to distribute it among the creditors as they may be entitled; and, for this purpose, one Chancery Court having jurisdiction of a bill embracing the most matters of litigation, having control of a large portion of the property of the corporation, and primary jurisdiction of the subject by having before it the necessary parties, may enjoin separate creditors from prosecuting independent suits against the common fund, either in the same or other chancery districts, especially upon a supplemental bill after a decree between the parties, although the decree be appealed from.

CHANCERY PRACTICE — SUPPLEMENTAL BILL TO REACH OTHER PROPERTY.— After an original bill filed by the creditors of an insolvent corporation to impound and administer its assets, in which specific property was attached, and after a decree upon the merits, from which an appeal is taken, a supplemental bill may be filed to attach and bring into court other property of the corporation, and to bring before the court other creditors of the corporation who are seeking to reach the property of the corporation by independent suits.

*M. M. Brien*, for complainants.
*Lea & Jouralman*, for defendants.

THE CHANCELLOR : — On August 11, 1875, the complainants, as policy-holders of the St. Louis Mutual Life Insurance Company, a foreign corporation doing business in this state, filed a bill in this court, on behalf of themselves and all other policy-holders like themselves citizens of the state of Tennessee, against the said company and others, for the purpose, among other things, of attaching certain bonds in the hands of the treasurer of the state, as superintendent or commissioner of insurance companies, and held in trust by him " as a security for risks taken by citizens of this state " in said company, and other property of said company, upon the ground that the corporation had become

insolvent and had ceased to exercise its franchises in this state, and to subject the effects attached to the satisfaction *pro rata* of the claims of all policy-holders, citizens of this state, who might come in under the proceedings and final decree. Such proceedings were had in this cause, that a final decree, determining the rights of the parties, was rendered on May 21, 1877, declaring that the complainants and other policy-holders of this state, on December 13, 1873, were entitled to have the property attached subjected to the satisfaction of their debts *pro rata*, the company having become insolvent, and having ceased to exercise its franchises in this state as of that date. The opinion of the court in this case is published in 2 Tenn. Ch. 727. On June 7, 1877, and before any appeal had been taken from the decree, the complainants filed a supplemental bill to reach other property of the insurance company in this county, knowledge of the existence of which had come to them after the hearing. Afterwards, the insurance company prayed an appeal to the Supreme Court from the decree rendered, and before the account ordered could be taken, which was granted. Subsequently, on September 20, 1877, the complainants filed an amended and supplemental bill to the bill of June 7, 1877, to reach other property of the insurance company, and, among other property, some lands and effects which had previously, but after the filing of the original bill of August 11, 1875, been attached by certain persons, made defendants, by several bills filed by them, as citizens of this state and policy-holders of said company, in the Chancery Court at Knoxville. No one of these last-named bills was filed as a general creditors' bill, but each of the complainants therein sought by his bill to acquire a lien for his own benefit on the specific property attached, upon the averments that the company was a non-resident corporation, and insolvent. The defendants who claim the benefit of these separate suits have appeared and demurred to the supplemental bills filed since the rendition

of the decree of May 21, 1877. The cause is before me upon these demurrers, and also upon a motion of the complainants for an injunction to enjoin the demurring defendants from proceeding with their separate suits.

The learned counsel of the demurrants, in his able argument, concedes that the first and second causes of demurrer assigned are in substance the same, namely, that the Chancery Courts of this state have no jurisdiction to wind up the affairs of a foreign corporation for insolvency and the non-user of its franchises, and declare its property in this state a trust-fund to pay creditors, and distribute it. The argument is, that the provisions of our Code, secs. 3431, 4294 4295, apply to domestic corporations, and the property of foreign corporations is left to be seized by the more diligent claimants, under other provisions of law. It is not denied that the sections mentioned clearly contemplate a *pro rata* distribution of the property of a corporation when its corporate franchises are not used, or when " its powers, franchises, and privileges " have been, in whole or in part, assigned to others. Nor is it denied that our decisions have settled that the assets of an insolvent corporation constitute, under our law, a trust-fund for the payment of creditors of the corporation, in the order of priority fixed by law, and if there be no priority, then *pro rata*, and that no amount of diligence on the part of one or more of the creditors can defeat the right of others to such distribution. *Marr* v. *Bank of West Tennessee*, 4 Coldw. 471 ; *Moseby* v. *Williamson*, 5 Heisk. 286. Both the statutes and the decisions speak of corporations, without drawing any distinction between domestic and foreign corporations ; and the principle of the decisions, as shown by the authorities cited, is manifestly based on the nature of corporations and corporate funds generally. And it would be a curious departure from uniformity, so desirable in the administration of law, to hold that a different measure of justice should be meted out to creditors, dependent upon whether their debtor

was a domestic or foreign corporation. Most clearly, there is nothing in the language of the Code or the decisions to give countenance to the distinction contended for.

The argument is rested upon the doctrine that the court of one state has no power to declare a forfeiture of the charter of a foreign corporation by the misuser or non-user of its franchises, and that such a result can only be accomplished by a direct proceeding for that purpose in the sovereignty creating the corporation. Citing *Society* v. *New Haven,* 8 Wheat. 483 ; *The People* v. *Society,* 1 Paine, 656. But a forfeiture of the charter is not involved in the equal distribution of the assets of a corporation, under our decisions and statutes, nor is it at all necessary that a declaration of non-user or insolvency should lead to such a result. The object is, in certain contingencies, to prevent unseemly scrambles, and to secure, what equity delights in, equality of rights among all who are equally meritorious. Every power which a foreign corporation exercises in a state depends, for its validity, upon the laws of that state. *Runyan* v. *Coster,* 14 Pet. 129. And the right exists in all sovereignties to regulate and restrain foreign corporations in doing business within its jurisdiction. *Merrick* v. *Van Santvoord,* 34 N. Y. 212. It is, moreover, an admitted principle of international law, that every state has the right to control and dispose of property actually within its jurisdiction ; and it is the duty of every state to protect the rights of its own citizens, and to aid them in the recovery of their just debts, without the necessity of resorting, for satisfaction, to the distant forum of another sovereignty. *Gilchrist* v. *Cannon,* 1 Coldw. 587. Upon these principles I based my decree of May 21, 1877, in this case, and also my decision in the case of *Hadley* v. *Freedman's Savings and Trust Company,* 2 Tenn. Ch. 129.

The third, fourth, and fifth grounds of demurrer are, in substance, that one Court of Chancery in this state will not enjoin or interfere with the proceedings of another. To sus-

tain this position, the counsel cites and relies on *Deaderick* v. *Smith*, 6 Humph. 138; *Smith* v. *Johnson*, 2 Heisk. 225; and *In re Chadwell*, 7 Heisk. 631. But these decisions only hold that a Court of Chancery of one district has no authority to usurp the jurisdiction of another, by *any interference with its decrees and judgments;* that is, by undertaking to review or reverse such decrees. It does not prevent the Chancery Court of one district from enforcing an independent equity as against the decree of the Chancery Court of another district. *Parker* v. *Britt*, 4 Heisk. 245. Nor, of course, will the general rule operate when the court is called upon to adjust rights as between parties who are independently litigating with a third party, for in such cases there is clearly no conflict of jurisdiction, and it is immaterial whether the independent litigation is proceeding or terminated. If two bills are filed by different persons for the same object, — as by two beneficiaries for a trust account, or two legatees for the settlement of an estate, — the court will not, ordinarily, stop either before decree in one, because *non constat* that a decree will ever be obtained in the other. *Clerke's Case*, 2 Freem. Ch. 162; *s. c.*, Nels. 21; *Gage* v. *Stafford*, 1 Ves. 544; *Venning* v. *Loyd*, 1 De G. F. & J. 207; *Innes* v. *Lansing*, 7 Paige, 583: *Macey* v. *Childress*, 2 Tenn. Ch. 26. It is the decree which justifies a stay of other litigation for the same purpose. *Houlditch* v. *Marquis of Donegal*, 1 Sim. & St. 493; *Rogers* v. *King*, 8 Paige, 210; *Green* v. *Neal*, 2 Heisk. 218. This is the rule when the separate bills are in the same court. If in different courts, the court which first acquires jurisdiction is usually entitled to retain it. *Basset* v. *Basset*, 3 Atk. 207. Undoubtedly, however, different courts of one sovereignty would act upon the same principle which governs a single court in which two or more bills are filed for the same object; and that is, they would allow that cause to proceed which embraced the most matters of litigation, and suspend the other. *Crofts* v. *Wortley*, 1 Ch. Cas. 241; *Rigby* v. *Strang-*

*ways*, 2 Ph. 175. In this view, the suit in this court would, in the present instance, have the advantage of all the others, for it alone embraces the whole matters of litigation, and enables the court to do *complete* justice. If the demurrants are entitled to the full benefit of their several bills in the order of the time of filing, and to the exclusion of all other creditors to the extent of the funds attached, they would be declared to be so entitled in the final decree. If, on the other hand, they have acquired no priority, it is obvious that the equality consequent upon this view could only be obtained in the present suit. Nor are we without authority directly in point. The filing of a general administration bill, upon the suggestion of the insolvency of the estate, either by the personal representative or any creditor, authorizes the suspension of all litigation in other courts, and the complainant is entitled to an injunction accordingly. Code, sec. 2383; *Martin* v. *Blakemore*, 5 Heisk. 50.

The rendition of the decree of May 21, 1877, would, beyond question, if not appealed from, have justified this court in staying all other litigation, wheresoever pending, touching the disposition of the assets of the insolvent corporation. It is insisted, however, and the remaining causes of demurrer are rested thereon, that the subsequent appeal vacated that decree, and thus destroyed the jurisdiction which might have been based upon it, citing *Freeman* v. *Henderson*, 5 Coldw. 647; *Graham* v. *Merrill*, 5 Coldw. 622; *Furber* v. *Carter*, 2 Sneed, 1. In this last case, which was an appeal in the nature of a writ of error, the eminent judge who delivers the opinion does say, *arguendo*, that an appeal in equity operates to "annul the judgment." In the early case of *Nichols* v. *Colvill*, 1 Tenn. 82, it was said that the judgment on appeal "ceased to exist." And the weight of *dicta* certainly, and perhaps of actual ruling, goes to this extent. The sounder rule was expressed by the court in *Suggs* v. *Suggs*, 1 Tenn. 3, the earliest case in our books on the subject, in the following language: "After

the appeal is entered in the court below, the authority of that court over that cause 'ceases.'' And even this language should be modified by adding, unless the appeal be set aside during the term at which it is granted. *Hall* v. *Bewley*, 11 Humph. 106. The judgment is certainly suspended by the appeal. *Maskall* v. *Maskall*, 3 Sneed, 208. And the appellate court, even if the appeal be by one party, acquires jurisdiction of the whole cause, and may reverse for error against the party who does not appeal. *Carnes* v. *Polk*, 5 Heisk. 244; *Steifel* v. *Clark*, Sup. Ct. Tenn., January term, 1877. If the appellant dismiss his appeal, and an entry be made in the appellate court remanding the cause, the decree below remains as if no appeal had been taken. *Franklin* v. *Franklin*, 2 Swan, 524; *Maskall* v. *Maskall*, 3 Sneed, 208. I must take it that the appeal did vacate the decree of May 21, 1877. (The rule was otherwise in England, the appeal, which might be taken from interlocutory orders as well as final decrees, not operating as a stay of proceedings unless by order of the chancery or appellate court. *Warden of St. Paul's* v. *Morris*, 9 Ves. 316; *Huguenin* v. *Baseley*, 15 Ves. 180.) But the supplemental bill in this case was filed before the appeal, and remains in this court notwithstanding the appeal.

It is argued, by the learned counsel of the defendants, that a supplemental bill will not lie, under the circumstances, but only an original bill in the nature of a supplemental bill. The precise point came before Chancellor Walworth in *Eager* v. *Price*, 2 Paige, 338, and he held that a supplemental bill would lie to reach other property of the debtor proceeded against by a creditor's bill. It became necessary, he says, for the complainant either to file a supplemental bill or commence a new suit. The former course would be far less expensive. Besides, he adds, '' this court certainly would not, except in a case of absolute necessity, and to prevent a failure of justice, allow two original suits to be commenced and carried on at the same time, between the

same parties, to obtain satisfaction of the same debt." Ordinarily, the supplemental bill grafts the new matter, and new parties, if any, into the original suit, so as to enable the court to deal with the matter and the parties of both records as one record. *Catton* v. *Carlisle*, 5 Madd. 427 ; *Wilkinson* v. *Fowkes*, 9 Hare, 198. And the defendants to both suits would not be permitted, in the supplemental suit introducing new matter, to go into evidence of the matters involved in and settled by the original suit. *Wilkinson* v. *Fowkes*, 9 Hare, 594. But the bill may be so far a supplemental suit, by the introduction of new matter and new parties, as to require a separate replication and separate evidence, and to constitute an independent record. Story's Eq. Pl., sec. 332. And see *Crompton* v. *Wombwell*, 4 Sim. 628.

There is another view of the question involved in the motion of the complainant for an injunction. This court has, by its decree of May 21, 1877, determined that the complainants are entitled to have the assets of the insurance company in this state applied *pro rata* to the satisfaction of their claims. The Supreme Court, it is true, may reverse the decree. But, *primâ facie*, the complainants have a clear equity, and it is precisely upon such *primâ facie* showing that the court always acts in the granting of injunctions. The injunction decides nothing, and only means that, as at present advised, the court is of opinion certain proceedings should be stayed. A final decree, upon full hearing, settling the complainant's right, is the strongest possible *primâ facie* showing of the right. This view of the subject was taken upon a motion to appoint a receiver after appeal in *Merrill* v. *Elam*, 2 Tenn. Ch. 514, and was sustained by the Supreme Court.

The foregoing considerations cover all the causes of demurrer assigned which were relied on in argument, or merit attention, and show that the demurrers are not well taken. They must be overruled, with leave to the defendants to answer.

These considerations, moreover, satisfy me that the injunction asked for by the complainants ought to be granted. It is true that the defendants might be allowed to proceed with their several suits until the Supreme Court has acted upon the decree appealed from, without prejudice to the complainants' rights. They could, even after final decrees in those suits, assert against the defendants any equities they may be entitled to under the decree of the Supreme Court. This was settled in the Bank of Tennessee cases. But there would be a large accumulation of costs to be borne by the property in controversy, already insufficient to answer the demands against it. Regulating my discretion by the balance of inconvenience and injury to the one party or the other (*Flippin* v. *Knaffle*, 2 Tenn. Ch. 238), I am of opinion that the injunction should issue, upon the complainants executing a bond in the penalty of $2,000, conditioned as in injunction cases before judgment.