Joseph W. Horton and wife *v*. John Thompson and others.

## October Term, 1877.

Chancery practice—Motion to suspend the progress of a suit.— A complainant who has filed a bill to correct a will by making it conform to the intention of the testator, and also instituted proceedings at law to test the validity of the will by an issue of *devisavit vel non*, is not entitled to a suspension of his suit in this court until the action at law is disposed of.

Same—Amended bill—Demurrer.—A supplemental bill which merely introduces supplemental matter to sustain the relief sought by the original bill is not a supplemental suit, but grafts the new matter into the original suit, and both records are treated as one record; and, in such case, the defendant who has demurred to the original bill may demur to the bill as supplemented.

Will—Parol evidence—False reason given for a devise.—Parol evidence is not admissible either to contradict, add to, or explain a will, nor can the positive provisions of a will be controlled by inference from other parts of the will, or by erroneous and false reasons assigned for such positive bequests.

Will—Illegal provisions—Devise void for remoteness.—A co-devisee who is also an heir cannot, either under the will or on the ground of partial intestacy, derive any benefit from the fact that the will undertakes to throw illegal restrictions around some of the other devises, with a view to protect the property against the claims of the creditors of the particular devisees, or adds on executory devises void for remoteness.

*West H. Humphreys*, for complainants.
*T. H. Malone* and *Ed. Baxter*, for defendants.

The Chancellor :— Early in the year 1876, John Thompson departed this life, testate, leaving him surviving his

widow, Mary H. Thompson, and three children, John Thompson, Joseph H. Thompson, and Ann E., the wife of Joseph W. Horton. By his will, the testator makes certain specific devises to his wife and each of his children absolutely, vesting, however, a part of the fund given to his daughter in a trustee, for her sole and separate use. The rest and residue of his personal estate, the rents and profits of his real estate not before specifically devised, and the interest and accumulations thereof, he constitutes a fund for the support of his wife and sons until the coming of age of the elder son, then to be appropriated for the benefit of and between his sons. The eldest son has come of age. He then vests his wife with the title in fee of certain realty, to hold during the natural life of his son John, the legal title, on his death, to vest in his issue living at the time of his death, and in the issue of such of his children as may have died, to represent and take the share of the parent; and if John should die without issue living at his death, the title of said realty to vest in the testator's son Joseph H. Thompson, if living, and if he be dead, in his issue then living, and if no issue then living, " to descend to the persons, whosoever they may be, legally claiming heirship from me." The wife, as trustee, is authorized to pay the rents of this realty to the testator's son John during his life; but, in the event John becomes heavily involved in debt, she is to suspend such payments and take control of the realty until the son is freed from his pecuniary embarrassments, the fund thus accumulated to be disposed of, on the son's death, as if it were real estate, and subject to the limitations of the real estate devised in trust as aforesaid.

The will then vests the wife with title in fee to certain other realty, in trust for the son Joseph H. Thompson, with precisely the same limitations in favor of issue, and of the brother or his issue, if no issue of Joseph be living at his death, and with like discretionary power and authority in the trustee, and with like provision for the accumulation of rents.

and their disposition as in the previous devise. There is then a direction that if either of the sons becomes involved in debt, having a family dependent upon him for support, a sufficiency of the rents required to be withheld as aforesaid shall be appropriated by the trustee to the support of the family of the son whose rents are thus withheld.

The will then contains this clause: "I have heretofore made advancements to my daughter, Annie E. Horton, and these advancements will explain any apparent inequality in my benefactions to my several children."

On September 26, 1877, the original bill in this cause was filed by Joseph W. Horton and Annie E., his wife, against Mary H. Thompson, the widow and executrix of the testator, and the two sons, John and Joseph H. Thompson. It makes a copy of the will an exhibit to the bill, and states its probate in common form. It states the fact that the sons have come of age, and that the will is being executed. It further states that the estates secured to the testator's sons, John and Joseph H., largely exceed in value the property given to the daughter, Annie E., including the advancement made to her by the testator in his lifetime. It claims that the clause of the will last above quoted shows that the testator "believed at the time he was executing his said will that the inequality in his benefactions was apparent, not real, and that he had distributed his entire estate equally between his three children." It also alleges, "that the oral declarations of the testator accorded with the supposed equal distribution of his estate made by the will." The complainants aver that the testator intended to make an equal distribution of his estate among his children, and that "a great mistake" in the execution thereof has defeated his intention. They ask the court, by its decree, to make the respective shares of the children in the estate equal, "thus conforming the dispositions of the testator to his intentions."

The bill further insists, that the devises in trust for the sons as above recited are illegal, contrary to public policy,

and void, and that the limitations over are too remote. The prayer is that the court would so declare, and distribute the property according to law.

The defendant demurred to this bill, and, by leave of the court, the complainants, on November 23, 1877, filed an amended bill, stating that, since the filing of the original bill, the complainants had exhibited a petition to the County Court for an issue of *devisavit vel non* to contest the validity of the will of the said John Thompson on the ground of undue influence. The complainants pray that this suit be suspended until the issue thus made is disposed of. The defendants have again demurred to the whole bill as amended. The cause is now before me upon the motion of the complainants to suspend all proceedings until the validity of the will has been tested at law, and if I should be of opinion that the cause cannot be delayed, then the case is before me on the matters of demurrer.

The bill treats the instrument exhibited as the will of the decedent, as it is under the probate in common form until set aside by the verdict of a jury upon an issue of *devisavit vel non*. The relief sought is rested on the ground that this court can correct it as a will, by reason of the alleged mistake of the testator in regard to the equality of the shares of the children, by equalizing the shares, and can, moreover, declare void the devises mentioned, and distribute the property thereby devised as in the case of intestacy. The new proceedings, brought before the court by the supplemental bill, are instituted to test the validity of the will. There is no such connection between the two suits and the relief sought by them as necessarily to make the result in either bear upon the other. The present suit is, it is true, worse than useless, if in fact the instrument sought to be construed is not the last will of the decedent. And, for this reason, the defendants might ask for a stay of proceedings herein until the proceedings at law were terminated. It may be, too, the substantial object of both suits being the

equal distribution of the assets of the estate among the children, that the defendants might put the complainants to their election in which forum they would first proceed. But I am not aware of any principle or rule of practice on which the complainants can themselves ask the stay of either suit until the other is terminated. For if they have any right to ask this court to suspend action until the court of law should dispose of the litigation before it, they would have the same right to ask that court to stay trial until this court could act. And by making the application in each court, both suits might be suspended indefinitely. Nor is there any reason for conceding to the complainants the right of suspension. They have the matter in their own hands, and may dismiss either action at their option, if they do not wish to prosecute both at once, and this without the least prejudice to their rights. And it seems mere caprice to commence two suits and then ask that one may be stayed, when the defendants are willing to give them the advantage of a trial in both. I do not understand that this court has any power to stay proceedings in a cause, at the instance of the complainant, to abide the event of a suit at law, unless the result of the suit is essential to the assertion of the complainant's rights. *The State* v. *Allen*, 2 Tenn. Ch. 42. Whenever the suit in equity cannot be safely proceeded with until some point is settled by an action at law, the power to suspend exists, like the power to enjoin, as an incident to the exercise of acknowledged jurisdiction. But if the action at law has no bearing upon the litigation in equity, and the latter must be determined, if determined at all, without reference to the result of the legal action, the suspension of the suit in chancery, at the instance of the party who institutes both proceedings, seems to be without reason, as it is certainly without authority. If the only effect of the result of the action at law would be, in one event, to make the litigation in equity useless, it is for the complainant to elect whether he will proceed in equity, or dismiss his bill and commence *de novo*, should it become necessary. The prayer to suspend is, moreover, not sup-

ported by any thing contained in the bill, and such a prayer has been treated by Chancellor Walworth as " informal and impertinent." *Hurd* v. *Everett*, 1 Paige, 124.

An amended bill is, in legal effect, an amendment of the original bill, and forms a part of it, and the defendant has a right to make a new defence to the entire bill as amended, if he chooses so to do. *Gambier* v. *Leheup*, 1 Dick. 44; *Savory* v. *Dyer*, Amb. 70; *Lloyd* v. *Lloyd*, 2 Cox, 431; *Richardson* v. *Richardson*, 5 Paige, 58; *Trust and Fire Ins. Co.* v. *Jenkins*, 8 Paige, 589; *Bradley* v. *Dibbrell*, 3 Heisk. 522. Ordinarily, a supplemental bill grafts the new matter and new parties, if any, into the original suit, and both records are treated as one record. *Wilkinson* v. *Fowkes*, 9 Hare, 198, 594. But the bill may be so far a supplemental suit by the introduction of new matter or new parties, or both, as to require a separate replication and separate evidence, and to constitute an independent record. Story's Eq. Pl., sec. 332; *Crompton* v. *Wombwell*, 4 Sim. 628; *Eager* v. *Price*, 2 Paige, 338; *Smith* v. *St. Louis Mutual Life Ins. Co. (supra*, p. 151). A supplemental bill which merely introduces supplemental matter to sustain the relief sought by the same plaintiff from the same defendant by the original bill is not a supplemental suit, and there is only one record and one cause. *Catton* v. *Carlisle*, 5 Madd. 427. And, in such a case, it has been expressly held that the defendant, who had demurred to the original bill, might demur to the bill as supplemented. *Bosanquet* v. *Marsham*, 4 Sim. 573. *A fortiori*, where the new matter cuts no figure in the relief sought, as in the case before us.

The first object of the bill is, as conceded by the learned counsel of the complainants in his brief, to obtain an equal distribution of the testator's estate upon the ground that the will, by mistake, makes an unequal distribution, when the testator, by his oral declarations and by the last clause of the quotations from the will above, shows that he intended an equal distribution.

As the law requires wills to be in writing, it cannot, con-

-sistently with this doctrine, permit parol evidence to be adduced, either to contradict, add to, or explain the con- .tents of a will. The principle of this rule, as Mr. Jarman has well said, evidently demands an inflexible adherence to it, even where the consequence is the partial or total failure ·of the testator's intended disposition. For, it would have been of little avail to require that a will *ab origine* should be in writing, or to fence a testator round with a guard of .attesting witnesses, if, when the written instrument spoke ·one thing, or failed of explicitness in some respects, its provisions could be corrected, or its deficiencies supplied .from extrinsic sources. No principle connected with the law of wills is more firmly established, or sustained by a more continuous line of decisions from the earliest to the latest times. *Lord Cheney's Case*, 5 Rep. 68 *b*; *Strode* v. *Lady Falkland*, 3 Ch. R. 181; *Mann* v. *Mann*, 1 Johns. Ch. 231; *Weatherhead* v. *Sewell*, 9 Humph. 272; *Weatherhead* v. *Baskerville*, 11 How. 357. The declara- tions of the testator relied on in the bill are, therefore, wholly inadmissible.

But the complainants rely upon a clause of the will itself ·which, they insist, indicates an intention on the part of the .testator to equalize his children. This clause is : " I have .heretofore made advancements to my daughter, Annie E. Horton, and these advancements will explain any apparent inequality in my benefactions to my several children.'' This language certainly shows that the testator fully understood that the will itself did not provide for his children equally. It does not show that he intended they should be equalized. In substance, it means that the testator, having previously made advancements to his daughter, chose to limit his bounty to her to those advancements and the specific pro- visions of the will intended for her benefit. If he chose to overvalue those advancements, admitting the validity of the will, as we must do so long as it remains probated, the legatee cannot complain. " He had an unquestionable right to set any price (or value) upon them he saw proper,

as the sum to be accounted for by the legatees." *Per* Caruthers, J., in *Gannaway* v. *Tarpley*, 1 Coldw. 576. It looks like a mere interjection thrown into the will by the testator, with full knowledge of all the facts, as a salve to his own conscience for the certain inequalities of the will. Be this as it may, and conceding the actual inequality claimed by the bill to exist, "if this has been explicitly done, or if the language used will admit of no other fair construction," to use the words of the same eminent judge in the case just cited, " it must be so, as we cannot make a will for the testator, by conjectural interpretation, upon our notions of what he ought or should have done. Our duty is to expound, and not to create or alter. This cannot be done by parol evidence of intention or declaration." 1 Coldw. 575.

At most, the bill shows that the will has given an erroneous or false reason for its positive provisions. But the rule is, that an express bequest is not controlled by the reason assigned. " You are not," says Sir William Grant, " by inference and argument from the other parts of the will, to control the effect of a positive bequest." *Jones* v. *Colbeck*, 8 Ves. 42; *Holder* v. *Howell*, 8 Ves. 102. " I do not apprehend," says the same great judge, in another case, " that a bequest actually made, or a power given, can be controlled by the reason assigned. The assigned reason may aid in the construction of doubtful words, but cannot warrant the rejection of words that are clear." *Cole* v. *Wade*, 16 Ves. 46. Another distinguished Master of the Rolls, Sir Richard Pepper Arden, arrived at the conclusion, in a noted and peculiar case, that, both by the civil law and the law of England, " a false reason given for a legacy is not of itself sufficient to destroy it." There must be, in addition, fraud practised, from which it may be presumed the person giving the legacy would not, if that fraud had been known to him, have given it. *Kennell* v. *Abbott*, 4 Ves. 808. No such fraud is averred by this bill.

In view of these considerations, it is clear that the bill

cannot be sustained on the first ground upon which the relief sought is rested.

Since the great case of *Thellusson* v. *Woodford*, 4 Ves. 227, it has been the settled law of English-speaking people, unless changed by statute, that an executory devise is good which must take effect within a life or lives in being, and twenty-one years and a fraction of a year thereafter. It is the law of this state. *Booker* v. *Booker*, 5 Humph. 505. The devises called in question by the second aspect of the bill must all go into effect at the death of the surviving son of the testator, upon the occurrence of the most remote contingency. And it is impossible to impeach the validity of any of the provisions of these devises, in view of our statute law and the actual decisions. Code, sec. 4283; *Nichol* v. *Levy*, MS. decision of Supreme Court of Tennessee, cited in *Nichols* v. *Levy*, 5 Wall. 433. And see *Campbell* v. *Foster*, 35 N. Y. 361. Besides, the conditions touching the accumulation and appropriation of rents seem to be strictly in accord with the authorities, outside of the statute. *Cooper* v. *Wyatt*, 5 Madd. 483; *Shee* v. *Hale*, 13 Ves. 404; *Twopeny* v. *Peyton*, 10 Sim. 487; *Nichols* v. *Eaton*, 91 U. S. 716; *Godden* v. *Crowhurst*, 10 Sim. 642; *Bramhall* v. *Ferris*, 14 N. Y. 41. And, in any event, the invalidity of these provisions could only be taken advantage of by the son or his creditors. The absolute interest in the entire property devised passes under the will, and the complainants cannot claim any part of it, or of the rents and profits, either under the will or on the ground that there is *pro tanto* an intestacy.

The demurrer must be sustained, and the bill dismissed with costs.

NOTE. — Affirmed on appeal.