TRENT ET AL., RESPONDENTS, *v.* SHERLOCK, APPELLANT.

(No. 1,231.)

(Submitted October 8, 1901.  Decided November 18, 1901.)

*Foreign Corporations—Principal and Agent—Mining Companies — President — Powers — Delegation of Powers — Superintendent — Unauthorized Acts—Ratification — Evidence—Instructions.*

1. A creditor of a mining company sought to have its president execute a bill of sale for certain machinery purchased from defendants.  The president refused, but referred the creditor to the company's superintendent, who executed such bill, signing it as manager of the company.  The directors of the company, with the exception of the president, resided in another state, and the president had the general management of its affairs within the state.  The creditor testified that he informed the president that the bill had been executed, and that the president knew the character of the transaction, but did not want it known that he was cognizant of the transaction, and that he was in the immediate vicinity when the creditor took possession of the property.  Defendants sued, and attached the machinery as the property of the company.  *Held,* that the evidence of the ratification of the bill of sale by the corporation was sufficient to justify the court in submitting that question to the jury, together with the bill of sale.

2. Independent of any ratification, the bill of sale was void, and not voidable, and the defendant was entitled to raise the question of its validity.

3. On the admission of the bill of sale, together with the evidence of ratification, defendant was entitled to have the jury instructed that they should not consider the contract as *prima facie* the act of the corporation, though it purported on its face to be executed by the manager on behalf of the corporation.

4.  A contract made for his principal by an agent, but entirely without the scope of his authority, is no more binding, until ratification, than if made by a stranger.

ON REHEARING.

(For former opinion, see 24 Montana Reports, 255.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This cause is before the court on a rehearing granted upon application of respondents on November 13, 1900. The argument and decision have been delayed on account of the illness of counsel for appellant. For a brief statement of the facts, reference is made to the former opinion in 24 Montana 255, 61 Pac. 650. These additional facts may be noted, as they do not appear in that statement: The Hope Mining Company was organized under the laws of the state of Washington. Its trustees, except the president, Pitner, reside in Seattle, in that state, and its general office is there. On the day following the execution of the contract by Franklin, the mine superintendent, Pitner, Franklin and Trent returned from Butte to Basin. Trent states that he took possession of the property after some conversation with Field, the manager; Pitner then being at his residence, near by. He further states that, after the contract had been entered into by himself and Franklin at Butte, he told Pitner that Franklin had given him a bill of sale, but that Pitner said that he did not care to know anything of it, and it must be understood that he did not.

The conclusion stated in the former opinion was that the defendant should be granted a new trial, on two grounds: First, that the trial court erred in admitting in evidence the contract upon which the plaintiffs found their claim to the property involved; and, second, in refusing to submit to the jury a certain instruction requested by the defendant. Upon consideration of the argument and the authorities presented by counsel in support of the motion for a rehearing, we still

thought that the trial court had erred in refusing to submit the requested instruction, but were inclined to the opinion that in holding that there was not sufficient evidence to go to the jury upon the question whether the written contract had been ratified by the Hope Mining Company, and that it should have been entirely excluded, we were in error. Further consideration of the subject has confirmed this impression, and we now think it the better view that the contract was properly admitted with the evidence tending to show that it was ratified by the corporation through its president, Pitner. From the fact that the corporation was organized under the laws of another state, and had intrusted to Pitner the general—practically the exclusive—management and control of its affairs in Montana, he was impliedly authorized to do any act necessary and proper, or usually done in the conduct of the ordinary business of the corporation. Under this condition of affairs, persons dealing with him could not be required to look further, and inquire what express authority his principal had intrusted to him. He therefore had implied authority to make purchases of property for the corporation either for cash or on credit, and to secure the payment of debts thus incurred for the purpose of keeping the mill in running order. Had the contract in question been executed on behalf of the company by him, it would, under the circumstances, have been *prima facie* the contract of the corporation, and binding upon it. No such implied authority belongs to an agent whose powers are apparently, as well as in fact, limited to the scope of the particular employment. A superintendent of a mine is not, as such, authorized to make contracts for machinery and other supplies necessary for the milling or smelting operations of his principal. If, however, the principal permits such an agent to act generally for him, or in other capacities than those for which he was employed, and thus holds him out as having the authority to do so, the principal cannot escape liability upon contracts made on his behalf by his agent acting in such other capacities. Franklin's authority being limited to a particular employment, the contract in ques-

tion was not *prima facie* the contract of the corporation. Nor was the usage and custom of business shown to be such in this particular instance as to justify the inference that he had authority, either as superintendent or manager, to pledge the property of the company. As was said in the former opinion: "Buying and selling or pledging are acts of a different nature. an authority to do the one by no means implies the authority to do the other; and, when it is sought to show an implied authority in the agent to do the act in question by proof of consent or acquiescence of the principal, this can be done only by proof of consent to or acquiescence in acts of a similar nature, or by proof of such acts as tend to show a general power." Therefore, though it appeared that Franklin had assumed on one other occasion to buy machinery for the company, and had for a short time, against the wishes of Pitner, the president, made deposits of its funds in his own name, and drawn checks thereon as manager, this was not sufficient proof of such a usage or practice to warrant the conclusion that he was impliedly empowered to act generally for the corporation in Montana. Nor do the facts presented tend to show that Pitner, the president, had either an express or an implied authority to delegate to any one else the general power intrusted to him, or that he could appoint a subagent to act in his place in the exercise of these powers. In the absence of such authority from his principal, he was powerless to make such a substitution. The evidence does not tend to show that he made any attempt to do so. While all this is true, however, a principal may, either expressly or impliedly, by acquiescence and consent, and by accepting and retaining the benefits with knowledge, ratify and adopt as his own a contract made in his behalf by a person who had no authority to act for him in the first instance, and thus become bound to perform all the duties and obligations which arise out of the transaction. A corporation is governed by the same principles. It may formally ratify through its board of directors an unauthorized act of this nature done in its behalf, provided the

act is not beyond its powers conferred by charter, or prohibited by law. It may also, by an acceptance or retention of the benefits derived from the transaction, after notice, become bound to perform all the obligations arising therefrom. So, by acquiescence with full knowledge through its authorized agents of the character of the act in question, it will be held to have accepted and ratified it. It can act only through agents, and notice to the agent of matters falling within the scope of his authorized duties is notice to the corporation.

The evidence in the case at bar tending to show that the president, Pitner, had or should have had knowledge of the character of the contract entered into by Franklin, was sufficient to go to the jury. He refused to enter into the contract himself; but the evidence has a tendency to show that he referred Trent to Franklin, with the statement that the latter had authority to make it. It also appears from the testimony of Trent that he told Pitner that he had obtained a bill of sale of the Bryan Mills that Pitner knew of the character of the transaction, but refused to be informed of the particulars, and did not want it known that he knew anything of the matter. Besides, on the next day he went with Franklin and Trent to Basin, and was there at the time Trent says he took possession of the mills. True, Pitner was called by plaintiff to testify, and denied all knowledge of the transaction until long after the defendant had made the levy. Still, it was for the jury to determine whether Trent or Pitner told the truth. If Trent's statements were to be taken as true, then Pitner knew or should have known that Franklin had undertaken to bind the corporation; and it was his duty, under the circumstances, to repudiate the transaction, and thus prevent his principal from being bound. He may not be permitted to say that he or the principal had no knowledge of the character of the contract and its purpose, while all the circumstances tend to show that he was put upon inquiry, and that it was his duty to inform himself.

In what we have just said touching the authority of Pitner

to act generally for the corporation in Montana, we have proceeded upon the assumption that the nature of his duties implied plenary power to do all the corporation could do in the conduct of its business. From the by-laws of the corporation, which were introduced in evidence by the defendant, it appears that he had express authority to sell and mortgage the property of the corporation, as well as to make all contracts for the sale or purchase of real estate, mining property, machinery, supplies, etc., but no power of substitution was given him. Therefore, even had it been error to admit the contract in the first instance, on the ground that Pitner had no authority to enter into it, and therefore had no power to ratify it, this evidence would have cured such error, and the defendant would have had no ground to complain of the ruling.

Counsel for respondents contend that the defendant in this case should not be heard to question the validity of the contract, for the reason that it was, at most, only voidable, and, being voidable only, no person other than the corporation itself could question its validity. In support of this view they cite the following authorities: *Eureka Iron and Steel Works* v. *Bresnahan,* 60 Mich. 332, 27 N. W. 524; *Gordon* v. *Preston,* 1 Watts, 385, 26 Am. Dec. 75; *Manhattan Hardware Co.* v. *Phalen,* 128 Pa. St. 110, 18 Atl. 428. With this view, however, we do not agree. From an examination of these cases, it appears that in each instance the contract involved was upon its face executed on behalf of the corporation by the proper officer, and that it had been ratified by the corporation by acquiescence and retention of the benefits derived from it. We are unable to distinguish between the act of a stranger and the act of a person who is an agent for another, but unauthorized to do the act in question on behalf of the latter. So far as it would affect the rights of the principal, or those of any other person than the agent himself, the attempt to bind the principal would be nugatory in each instance. If, for instance, A., a stranger, attempts to sell and deliver to C. the personal property of B., assuming to act as the agent of B., and, before B. has any knowledge of

the transaction, D., a creditor of B., levies upon such personal property in the hands of C.; could it, on principle, be said that C., the purchaser, had acquired such rights in the property as to enable him to defeat the lawful claims of D.? In our opinion the contract, as a contract entered into on behalf of the putative principal, has no binding force upon any person, except, by way of estoppel upon the would-be agent, until such putative principal has been informed of it and has either expressly or impliedly ratified it; and all persons dealing with the property prior to such ratification acquire the same rights therein as if the agent had not attempted to act. A contract made for his principal by an agent, but entirely without the scope of his authority, is no more binding, until ratification, than if made by a stranger.

For the reasons stated, the conclusion reached in the former opinion upon the first point decided must therefore be modified in accordance with the views now expressed; but we still think that the court committed prejudicial error in refusing the requested instruction. The defendant was entitled to have the jury cautioned that they should not consider the contract as *prima facie* the act of the corporation,—in other words, that there was no presumption in favor of it because it purported on its face to be executed by Franklin on behalf of the corporation.

The judgment and order are reversed, and the cause is remanded for a new trial.

*Reversed and remanded.*