LEWIS, HUBBARD & COMPANY *v.* H. R. PUGH *et al.*

(No. 7642)

Submitted April 25, 1934. Decided June 12, 1934.

*Owen, Silverstein & Davis,* for appellant.
*Hubard & Bacon,* for appellee Lewis, Hubbard & Co.

MAXWELL, JUDGE:

By decree of August 15, 1932, the circuit court of Fayette County adjudged that two notes of Brockman Smokeless Coal Company, one for $17,100.00 dated January 2, 1931, payable to C. A. Brockman and endorsed and transferred by him to H. R. Pugh, and the other for $1,675.00 dated September 29, 1925, payable to said Pugh, "were both without consideration and made and transferred to the said H. R. Pugh for the fraudulent purpose of defeating the plaintiff, Lewis, Hubbard & Company, in the collection of its judgment against the said Brockman Smokeless Coal Company * * *." Upon Pugh's petition for an appeal from that finding, we refused to review the matter in respect of the larger note but awarded an appeal as to the note for $1,675.00.

In 1923, Stone Cliff Collieries Company executed notes in the aggregate of $65,000.00, representing a part of the purchase price agreed to be paid by it for certain tracts of land acquired of Chester B. Humphreys. These notes, endorsed by C. A. Brockman, were purchased by the plaintiff, Lewis, Hubbard & Company in October, 1923.

In March, 1924, the Collieries Company conveyed the said tracts of land to the Brockman Smokeless Coal Company which assumed the payment of the said notes. The coal company paid only one of these notes, it being in the sum of $5,000.00. In December, 1930, Lewis, Hubbard & Company proceeded by notice of motion in the circuit court of Fayette County against the Collieries Company, C. A. Brockman and the coal company for judgment on the remaining fourteen notes. In January, 1931, judgment was rendered on said notice against the Collieries

Company and Brockman for the net balance of $77,-416.60. The demurrer of the coal company to said notice was sustained by the court.

In further effort to obtain judgment against the coal company, the plaintiff immediately instituted a chancery suit in said circuit court against the said company. In May, 1931, the plaintiff obtained a decretal judgment by default against the coal company for $74,222.75. In January, 1931, H. R. Pugh caused notices to be executed that on the 30th day of said month, he would move the circuit court of Kanawha County for judgment against the Brockman Smokeless Coal Company for the amount of said smaller note, with interest, and against the said coal company and C. A. Brockman for the amount of the larger note, with interest.

On January 28, 1931, Lewis, Hubbard & Company instituted this suit in the circuit court of Fayette County primarily for the purpose of having said two notes cancelled for fraud in their procurement and execution, and, incidentally, to enjoin the prosecution of the said two notices of motion for judgment pending in the circuit court of Kanawha County. The result in the circuit court was the entry of the decree herein first above noted.

Pugh's first challenge goes to the right of the circuit court of Fayette County to enjoin the prosecution of the two proceedings at law in the circuit court of Kanawha County. In support of this proposition, reliance is made upon Code 1931, 53-5-3:

> "Jurisdiction of a bill for an injunction to any judgment, act or proceeding shall, unless it be otherwise specially provided, be in the circuit court of the county in which the judgment is rendered, or the act or proceeding is to be done, or is doing, or is apprehended, and the same may be granted to a judgment of a justice in like manner and with like effect as to other judgments."

The point is not well taken, because the said statute has been construed to apply only to bills of injunction and not to proceedings wherein an injunction is merely

ancillary or incidental to the primary purposes of the bill. *State* v. *Fredlock,* 52 W. Va. 232, 43 S. E. 153. That case also lays emphasis on the fact, proper to be noted here, that an injunction, issuing from one court, to stay proceedings in another, operates upon the parties only, and does not encroach on the jurisdiction of such other court. The case at bar was proper for the jurisdiction of the circuit court of Fayette County because the place of business of Brockman Smokeless Coal Company was in that county and its president and all other officers, except the treasurer, H. R. Pugh, resided there.

The aforesaid note of $1,675.00 executed by the Brockman Smokeless Coal Company, by C. A. Brockman, president, to H. R. Pugh, dated September 29, 1925, with interest from that date at the rate of eight per centum per annum, was not in fact executed and delivered until on or about January 2, 1931. The debt purported to be represented by said note, as testified by both Pugh and Brockman, originated in September, 1925. The money was used in payment of Brockman Smokeless Coal Company taxes for 1924. It must be noted that said taxes had been assessed, under the statute, against Stone Cliff Collieries Company, the owner of the property January 1, 1924. There is nothing in the evidence to indicate that when the Brockman Company acquired a deed for said property in March, 1924, there was any undertaking by the purchaser to pay the taxes for that year. The debt remained an obligation of the Collieries Company.

The plaintiff contends that in that situation, the coal company had no right to discharge the said tax obligation. That contention cannot be sustained because, although the 1924 taxes constituted a primary obligation of Stone Cliff Collieries Company, the state's lien for the said unpaid taxes attached to the land, and it therefore became necessary for the coal company to pay the taxes in order to relieve the land of the state's paramount claim.

Neither the stockholders nor the directors of the Brockman Smokeless Coal Company authorized the borrowing of money in September, 1925, to pay the 1924 taxes. The

money was borrowed of Pugh by Brockman, president. There was no specific ratification of this unauthorized act of the president. Questions of implied ratification of the borrowing, implied assumpsit and statute of limitations are matters not herein involved. The sole question now is on the note. It, too, was unauthorized by stockholders or directors. Brockman again acted without authority. The record is silent not only on the question of authorization of the president to execute the note but as well on the question of ratification of his act. The plaintiff relies on these facts in support of its attack on the note.

"There is no inherent authority in the president of a corporation to execute notes or other instruments on its behalf." *Flanagan* v. *Flanagan Coal Company,* 77 W. Va. 757, 88 S. E. 397. "Though the corporation has power to borrow money, the president has no inherent power to borrow money for it. So there is no inherent power in the president to sign the name of the corporation to commercial paper; and to render the corporation liable, in addition to showing the signature of the corporation by its president to a promissory note, the authority of the president must be shown." 7 Ruling Case Law, p. 452. And, ordinarily, the question of lack of authority of an officer of a corporation to execute an instrument binding the corporation may be raised by creditors for the purpose of protecting corporate assets where the effect of such instrument would be to deplete the assets in fraud of creditors. 14a Corpus Juris, p. 413; *State* v. *Perkins,* 90 Mo. App. 603; *Trent* v. *Sherlock,* 26 Mont. 85, 66 P. 700. Such situation is analogous to a fraudulent conveyance by a debtor corporation. In the absence of justification of the position that assets are being depleted in fraud of creditors, they may not intervene because of an *ultra vires* act. 4 Thompson on Corporations (3d Ed.), p. 620; 7 Fletcher Cyclopedia Corporations, p. 599; *Brent* v. *Simpson,* 238 Fed. 285. In the case before us there existed the conditions requisite to permit a creditor to complain. The very purpose of the note was to give Pugh an undue advantage over other creditors,

and thereby necessarily to deplete the assets *pro tanto*. The original borrowing in 1925 may have inured to the benefit of creditors of the company as well as the company itself. But any question of estoppel against the coal company or its creditors that might have arisen in respect of that transaction has no bearing on the belated note. If the note had been executed and delivered as an element of the original transaction, it would be in much better setting than that which it now occupies.

The facts attending the execution of the note (with interest at eight per centum) six years after the money had been obtained of .Pugh, the company being insolvent when the note was executed, were such as to persuade the learned trial chancellor that the note should be deemed a fraudulent paper as to the rights of the plaintiff and consequently that the reducing of the same to judgment so as to create a lien that would be prejudicial to the rights of the plaintiff should be enjoined.

Being of opinion that the trial chancellor committed no error in his holdings in respect of the $1,675.00 note, we decline to disturb his decree and affirm the same.

*Affirmed.*