AMHERST W. STONE, plaintiff in error, vs. HENRY S. WET-MORE, defendant in error.

Pending a controversy, under a *quo warranto*, against one in possession of a public office, a Court of Equity has no jurisdiction to enjoin the *de facto* officer from receiving the fees of the office, nor to appoint a Receiver to take and hold the same same until the controversy is settled.

*Quo Warranto.*   Injunction, etc.   Before Judge SCHLEY. Chatham County.   Chambers.   March, 1871.

Stone averred that he was the Ordinary of Chatham county, duly commissioned, in possession of the records and exercising the functions of the office; that during his temporary absence from Savannah, Wetmore, without authority of law, took possession of said office and records, and is assuming to act as Ordinary and is receiving the fees of the office, which are worth, say, $100 00 per week.   He filed a petition for *quo warranto* to eject Wetmore, but the Court refused to grant it, and that cause is before this Court upon writ of error.

As some time must elapse before this cause can be finally disposed of, and as Wetmore is insolvent, he prayed injunc-

tion against his receiving such fees, and that they be paid to a Receiver, to be held subject to the final decision of this controversy. This bill was demurred to, and the Court refused to grant any part of the prayer. That is assigned as error.

W. DOUGHERTY, A. SLOAN, A. W. STONE, for plaintiff in error.

HARTRIDGE & CHISOLM, JACKSON, LAWTON & BASSINGER, for defendant

McCAY, J.

If the defendant in this case is an intruder into the office, attempting without any show of right to exercise its duties and receive its fees, if he is, in fact, a mere trespasser, with no right to claim its proceeds, then any one who pays them to him, does so at his peril; his acts are all void, the receipt of the fees cannot hurt the complainant.

But, if, as must be assumed, in order to give any show of foundation for this bill, he is a *de facto* officer, performing the duties of the position under such circumstances as justify him in demanding and receiving the fees, we know of no authority to justify a Court of Equity in interferring. To do so, would practically decide the dispute as to right to the office.

For purposes of public policy, it is a settled rule that an officer *de facto* may do legal acts, though his title to the office may be defective: Code, section 120. The same public policy which establishes this rule, prevents the Courts from interferring to disturb the *de facto* officer in the receipt of the fees. If he works he must live. The law authorizes him to demand his fees on the performance of the work. The practice is universal for the Ordinary to demand his fees, and not to deliver to the parties their letters, certificates, etc., until their fees are paid. We should hesitate to hold an Ordinary

bound to do the duties of his office for one who failed or refused to pay him the fees fixed by law.

To appoint a Receiver to take the fees would be to authorize the Ordinary to refuse to perform the duties of his office.    Suppose it were necessary, as it sometimes is, to enforce the collection of fees by execution or by attachment, is the Receiver to do this?    Is the Ordinary to issue the process in the name of the Receiver?    Is the Receiver to sit by and take the fee for every marriage license, every set of letters of administration, every order or certificate the Ordinary may grant?    Or is the Ordinary, when he receives the fees, to pay them over to the Receiver?    It seems to us that to set up such a power, in a Court of Chancery, is to assume a jurisdiction over constitutional functionaries that is contrary to law, contrary to public policy, and contrary to all the authorities: 9 Paige R., 507; Cooper vs. Reilly, 2 Sim., 561; 10 Beavan, 544, 545; 9 Paige, 507; 2 Paige, 333; Edwards on Receivers, 57.

In England, as a general rule, a Receiver will only be appointed when there is a suit pending—a controversy in the Court: 1 Atkins, 578—except in some special cases, as in protection of the interests of lunatics and infants, and when the Court interferes as the general guardian of that class of persons.    Here, there is no controversy in the Court.    The proceeding is at law, over a legal matter, and depending on legal, not equitable, rights.    The power to appoint a Receiver, provided for in section 265 of the Code, is not to the Chancellor, but to the Judge of the Superior Court.

Upon the whole, we are satisfied that the demurrer to this bill was properly sustained.

Judgment affirmed.