## YATES *v.* SUMMERS.

(Division A. Nov. 30, 1936.)

[170 So. 827. No. 32516.]

Roberts & Smith, of Cleveland, for appellant.

254

Sillers & Roberts, of Rosedale, for appellee.

260

Argued orally by **Walter Sillers** and **W. C. Roberts**, for appellee.

**McGowen, J.**, delivered the opinion of the court.

On the 3d day of January, 1936, the appellant, J. W. Yates, without notice to the appellee, procured from the chancellor of his district, on a bill in equity, a fiat of injunction against the appellee, A. G. Summers. The bill was filed in the chancery court of Bolivar county on

January 5th, and on that day the temporary injunction was served upon the appellee.

The bill alleged that Yates was elected at the general election held in November, 1931, as a member of the board of supervisors from the third district of Bolivar county for a term beginning on the first Monday in January, 1932, and extending for a period of four years, and until his successor was duly elected and qualified, and that he was then serving as said supervisor. It further alleged that A. G. Summers was a candidate for supervisor from the third supervisor's district, and received a majority of the votes cast in the general election held on November 5, 1935; that Summers was ineligible to hold said office of supervisor, for the reason that at the time of said election he was not a resident freeholder in the district for which he was chosen and did not then and there own real estate of the value of three hundred dollars, and did not at the time of the filing of the bill own real estate of said value. The bill further alleged that no other person had been elected to said office; that no other person had qualified or attempted to qualify to hold said office; and that no other person claimed said office.

The appellant further charged that he was entitled to hold the office then occupied by him as supervisor for the full term of four years and until his successor should be duly qualified; that by reason of the fact that Summers was not a resident freeholder in said district at the time of his election on the 5th day of November, 1935, and has not since owned real estate, he (Summers) was, therefore, ineligible to succeed appellant as supervisor; that the office of supervisor was a valuable right; that it was his duty to hold over at the expiration of his four year term until his successor had qualified; and that he was entitled to so hold over. He alleged that Summers had filed his bond as supervisor and had taken the oath of office with the clerk of the chancery court in an effort

to qualify for said office; that on the 6th day of January, 1936, or the first Monday of said month, he would assume the duties of said office, and that the appellant would thereby be ousted from the office of supervisor and from his right to so hold over and would thereby suffer irreparable injury and lose the emoluments of the office; and that an injunction would not damage Summers because he had a plain, open, and adequate remedy to test the title to the office.

The appellant prayed for an injunction restraining Summers from making any interference with the complainant in the exercise of his duties as a member of the board of supervisors, and for an order restraining Summers from interfering with complainant in the performance of any of the functions of said office of supervisor, and from performing, or attempting to perform, any of the duties of said office until said Summers had established his claim to the office by judicial proceedings as provided by law.

On February 10, 1936, Summers appeared and answered the bill. He admitted that Yates had been elected supervisor for the third district in November, 1931, at the general election; that he qualified and entered upon the duties of his office, and that his term of office expired at 12 o'clock p. m. on the 5th day, before the first Monday, being the 6th day, of January, 1936. He states that he was duly elected on November 5, 1935, to the office of supervisor of the third district, receiving a majority of the votes cast, and that he has qualified to discharge the duties of that office by giving bond and taking the oath. He denied that he was not a resident freeholder of the district from which he was elected, and averred that he owned real estate in the district of the value of three hundred dollars at the time of the election and at all times thereafter. He exhibited the certificate of election issued to him on the 8th day of November, 1935, and also the commission to the office of supervisor

for the Third supervisor's district of said county, dated the 31st of December, 1935. He affirmed that he was qualified in all respects to hold the said office, and denied that on and after the 6th day of January, 1936, the appellant had any right or title to said office.

By way of demurrer the appellee challenged the jurisdiction of the chancery court to determine the right or title to public office, and to restrain him by injunction from going into office, because the appellant had an adequate and exclusive remedy at law by quo warranto proceedings. On the same day, the appellee filed a suggestion of damages and a motion to dissolve the injunction on the ground that the bill showed on its face that he was prima facie entitled to the office to which he had been elected.

By permission of the court a supplemental bill was filed by the appellant, in which he charged that on the 6th day of January, 1936, appellee had presented to the board of supervisors a telegram from the Governor of the state appointing him a member of the board of supervisors to fill a vacancy existing in that office, and that he filed an additional bond and undertook to qualify under said appointment. He further charged that the acceptance of this appointment from the Governor was a waiver of appellee's right to claim the benefits of the general election, or a certificate thereunder, or his commission issued by the Governor in pursuance of said election.

On the hearing of the motion to dissolve the injunction the court below sustained the demurrer to the bill and supplemental bill, dissolved the injunction, and allowed attorneys' fees as damages, as well as other damages.

The record in this case does not disclose that quo warranto proceedings have ever been instituted by either of the contenders for the title to and possession of this office. It is undisputed that Summers was duly elected at the general election held on November 5, 1935. It is conceded that in pursuance of said election the consti-

tuted authorities issued to him a certificate of election; that the Governor issued to him a commission; and that prior to the issuance of the injunction Summers had given bond and taken the oath of office as Supervisor of the third district of Bolivar county.

It will be observed that on the date the injunction was granted in this case, and on the date the bill was actually filed, neither of the parties were yet in possession of the office for the new term beginning January 6, 1936. The precise question presented here is: Which of the two contenders for this office was entitled to go into office at the beginning of the new term, pending a quo warranto proceeding to determine the right and title to the office in question? The appellant predicates his rights herein as a hold-over officer under section 2881, Code 1930.

Early in the jurisprudence of this state, a chancellor declared that the legality of an election for trustees could not be investigated in a chancery court by means of an injunction; that this could only be done by information in the nature of a quo warranto, regularly prosecuted before the proper tribunal. Moore v. Caldwell, Freeman Ch. 222. In Town of Sumner v. Henderson, 116 Miss. 64, 76 So. 829, this court said: "This suit is an attempt by injunction to try the right and title to the offices of these defendants who are exercising the duties of these offices. The proper remedy is by quo warranto, not by injunction. . . . The rule is thus stated in Pomeroy's Eq. Jur. vol. 5, sec. 333: 'It is a principle of universal application that an injunction will not issue when its object is to try title to public office.' . . . The appointment of these defendants by the Governor, whether legal or illegal, and the performance by them of the duties constitute them de facto officers at least. Adams v. Bank, 75 Miss. 701, 23 So. 395."

Dillon's Municipal Corporations (5 Ed.), sec. 1554, p. 2731, states: "The certificate of election of an officer, or

his commission, coming from the proper source, is prima facie evidence in favor of the holder; and in every proceeding, except a direct one to try the title of such holder, it is conclusive.''

In the case of Myers v. Chalmers, 60 Miss. 772, where there was an effort to mandamus the secretary of state, and where a commission had been issued by the Governor, this court said, referring to the commission: ''It must stand until vacated and annulled by a body which has the right to investigate the facts of the election, and decide who is entitled to the office.''

In the case of Witherspoon v. State ex rel. West, 138 Miss. 310, 103 So. 134, 139, we said: ''The appellant's commission is prima facie evidence that he was regularly appointed and confirmed by the Senate, and, if his commission were the only evidence which the court below had before it of his appointment and confirmation, he would have been entitled there and would be here to a judgment in his favor.'' For other authorities, see Casey v. Bryce, 173 Ala. 129, 55 So. 810; Wamsley v. O'Hara, 182 La. 213, 161 So. 587; Stevens v. Carter, 27 Or. 553, 40 P. 1074, 31 L. R. A. 342; State ex rel. Lamar, Atty. Gen., v. Johnson, 35 Fla. 2, 16 So. 786, 31 L. R. A. 357, and De Shazo v. Davis, 157 Va. 517, 162 S. E. 320, 81 A. L. R. 614. The rule is more strongly stated in 46 C. J. p. 1007, sec. 214.

Appellant's claim is based upon the assertion that under section 196, Code 1930, he has the prima facie right to hold over after the expiration of his term, because he has charged that Summers is ineligible to hold the office. That section reads as follows: ''A person shall not be a member of the board of supervisors who is not a resident freeholder in the district for which he is chosen, and the owner of real estate of the value of three hundred dollars.'' The appellant further asserts that the decisions of this court in various quo warranto proceedings demonstrate that he had the right to hold over, and therefore

was the prima facie, or de facto, officer. The cases relied on principally are Wilkins v. Large, 163 Miss. 279, 141 So. 585; Andrews v. State ex rel. Covington, 69 Miss. 740, 13 So. 853; Roane, Dist. Atty., ex rel. Tunstall v. Matthews, 75 Miss. 94, 21 So. 665; and Burnham v. Sumner, 50 Miss. 517, which hold to the effect that one holding over, where so authorized by the Legislature, could contest the eligibility of the party elected as his successor. In Roane ex rel. Tunstall v. Matthews, Tunstall was the hold-over contestant and Matthews was the elected official. Matthews went into office and Tunstall brought his action in quo warranto. The court there held that the hold-over officer was entitled to hold the office from the date of the beginning of the new term. These cases all arose by quo warranto in a law court.

It is true that an equity court has no jurisdiction to try by injunction the right to office of either of the parties to this litigation. The rule as to when a remedy by injunction is applicable is stated in 46 C. J., p. 1007, 1008, sec. 215, a part of which is as follows: "It is a general rule of law that an injunction will not be granted to prevent a party from exercising a public office pending proceedings to determine his right thereto. The rule is applied as well where the petition is made by the attorney of the state, as where the application is made by a private citizen. On the other hand an injunction will be granted at the instance of an incumbent of office to restrain a claimant for the office from interfering therewith until he has established his claim to the office in direct proceedings to try title. . . . The incumbent of an office, in order to obtain relief against interference therewith by a claimant, must show that he has possession of, and the prima facie right to occupy, the office, or must prima facie show that there is no other person authorized by law to hold the office." Also see section 1758, vol. 4, Pomeroy's Eq. Jur. (4 Ed.). In this state chapter 59 of the Code of 1930 (section 3052 et seq.)

provides the method for trial of the right or title to office by quo warranto and vests the jurisdiction thereof in the circuit court.

Appellant cites us to many cases in direct proceedings which hold that a hold-over officer may contest with a claimant to the office the right or title thereto, and if successful he is adjudged to be entitled to the office from the moment of the inception of the hold-over term. These cases do not undertake to settle the prima facie right to office, but generally speaking, on these trials the prima facie case was overcome by the facts.

Appellee most strongly relies upon statments found in Wood v. Miller, 154 Ark. 318, 242 S. W. 573; Guillotte v. Poincy, 41 La. Ann. 333, 6 So. 507, 5 L. R. A. 403; Casey v. Bryce, 173 Ala. 129, 55 So. 810, 811; Wright v. Cook, 216 Ala. 270, 113 So. 252; and Doughty v. Bryant, 226 Ala. 23, 145 So. 420. The case of Wood v. Miller was a direct proceeding to try the title to the office and was based upon the statutes of that state. The jurisdiction of equity by way of injunction was not involved. Guillotte v. Poincy held that an injunction was proper on behalf of an incumbent rightfully in possession as against a claimant out of possession, in order to protect the incumbent until the title to the office was settled. Under the Louisiana statutes the incumbent was held to be a de facto officer in possession of the effice. There the incumbent was not shown to be a hold-over official. In Wright v. Cook, the Alabama court held that the complainants, Cook and others, were prima facie in office, with the right to continue therein, in the midst of their terms which had not expired, and that they were entitled to injunctive protection as against claimants who attempted under those circumstances to oust them. In the Doughty case injunctive relief was denied the hold-over official who had been defeated by the claimant in the election, and who sought to hold over on the ground that his antagonist was elected at a void election. The

Casey case is almost on all fours with the case at bar. Casey was the hold-over officer under a statute like ours. Bryce was elected and received the certificate of election and the commission. There the court held that Casey as the hold-over officer was not entitled to injunctive protection because Bryce had prima facie right and title to the office pending a settlement of the title thereto in the proper court. The court said: "The bill of complaint, thus viewed, presents a singular and sinister aspect. It proposes, not that the chancery court shall consider or determine the merits of the pending contest, but that, so long as that contest remains undetermined, the complainant shall be allowed to occupy the office and harvest its perquisites to his own use. And it asks the mandatory aid of a court of chancery to keep in office one whose lawful term has expired, and to keep out one who has been duly elected thereto and commissioned therefor; in other words, to halt him upon the threshold, and command him to wait until the claims of his competitor, a stranger to complainant, have been disproved. There is not, and cannot be, any such right in an outgoing public officer, and we are cited to no principle of law that even tends to support the proposition."

In line with the announcement of the general rule, the prima facie right of an officer armed with an election by the people, a certificate of his election, regular on its face, and the commission therefor, and who has duly qualified, seems to be quite universal as against one who desires or claims to hold over into the new term under statutes similar to ours, even though it may finally be determined in a contest that he has not been elected or is ineligible to hold the office. An illuminating case in point is De Shazo v. Davis, 157 Va. 517, 162 S. E. 320, 81 A. L. R. 614, and notes. In that case De Shazo, the newly elected officer, was installed in the office by mandamus at the beginning of his term as against the hold-

over incumbent, pending a contest involving the title to the office.

Under the allegations of the bill in the case at bar Summers was prima facie entitled to the office and to function with all the insignia and emoluments unless and until he should be ousted by a court of competent jurisdiction. This is essential to an orderly administration of our form of government in this state.

In the general election in 1935 four hundred and ten supervisors in the eighty-two counties of the state were elected. Suppose the incumbents should conclude to hold over into a new term, although not elected and having no claim thereto save the statutory right to hold over and allege in a bill for injunction that their elected successors were not eligible because they did not own real estate of the value of three hundred dollars, and on that allegation procure a temporary injunction on the eve of the new term. The will of the people would be thwarted, the hold-over officer would participate in the election of subordinate employees of the board, and might determine the policy of the board against the will of the people. The procedure adopted by appellant would permit him to create a vacancy, declare himself entitled to continue to hold the office, and force the prima facie officer to litigate with him. If this were upheld, every officer elected by the people would remain uncertain as to his status until he had actually taken possession of the office.

The rule was well stated in the case of Stevens v. Carter, 27 Or. 553, 40 P. 1074, 1076, 31 L. R. A. 342: "To allow an incumbent to hold over and retain possession of an office after the close of his term, when a certificate of election has been issued to another, who has duly qualified, because, perchance, the incumbent may think his successor is ineligible, or has been duly elected, would thwart the popular will, as expressed by the majority at the election, and tend to make the incumbent

the judge of his own rights, as well as of the eligibility, election, and qualification of his successor. State ex rel. Jones v. Oates, 86 Wis. 634, 57 N. W. 296 [39 Am. St. Rep. 912]. The electors having expressed their preference at the polls, it is better that the person chosen by their votes, having obtained the certificate of election, and qualified, should be inducted into office, and the burden of proving the ineligibility and want of election or qualification cast on the prior incumbent, than that his successor should be deprived of his office until he could show himself eligible thereto.''

Summers did not waive his claim by accepting an appointment from the Governor after this injunctive writ was served upon him. Turnipseed v. Hudson, 50 Miss. 429, 19 Am. Rep. 15.

Appellee, by motion, asked for an allowance of attorneys' fees for services of his attorneys in the Supreme Court in preventing or resisting the effort of appellant to have reinstated in this court an injunction dissolved in the lower court. It has long been our custom under such circumstances and in such cases to allow one-half of the fee allowed in the lower court when the fee fixed below is reasonable and proper. In this case we adhere to our rule as expressed in Mims v. Swindle, 124 Miss. 686, 87 So. 151, and specifically authorized in Brooks-Scanlon Co. v. Stogner, 114 Miss. 736, 75 So. 596. Three hundred dollars was allowed by the lower court, one hundred fifty dollars is allowed in this court, as attorneys' fees for defending this appeal.

We find no error in the action of the court below.

Affirmed.