A. Page Lockard, *et al.*

*v.*

J. Frank Wiseman, *et al.*

(No. 10633)

Submitted January 14, 1954. Decided February 26, 1954.

*Maxwell & Young, Haymond Maxwell, Sr., Roger J. Morgan, Guy H. Burnside,* for appellants.

*John S. Stump, Jr., H. Laban White, Jr.,* for appellees.

HAYMOND, JUDGE:

In this suit in equity instituted in the Circuit Court of Harrison County on May 7, 1953, the plaintiffs A. Page Lockard and Lloyd D. Griffin seek to enjoin the defendants J. Frank Wiseman and Loretta G. McCracken from inter-

fering with the plaintiffs in the discharge of their duties respectively as manager and clerk of the City of Clarksburg. The plaintiffs assert that by virtue of the action of five Republican members of the council of the city at its meeting on May 4, 1953, they were duly appointed to those respective offices and that, the term of the defendants as incumbents of those offices having expired, the plaintiffs are respectively entitled to occupy and discharge the duties of those offices without interference by the defendants. Pursuant to written notice returnable May 7, 1953, the plaintiffs and the defendants in person and by counsel appeared before the Circuit Court of Harrison County and the hearing of matters arising upon the motion of the plaintiffs for a temporary injunction was continued until May 9, 1953, at which time the regular judge of the court, deeming himself disqualified to hear the case, continued it until such time as the services of another circuit judge could be obtained to hear and determine the cause. On May 14, 1953, the parties in person and by counsel again appeared, a visiting circuit judge sitting in lieu of the regular judge of the court, and, at that time, the plaintiffs filed their verified bill of complaint and certain exhibits which include affidavits, the defendants filed their written demurrer, their verified answer and certain affidavits, and, upon the bill of complaint, the exhibits and the affidavits, the plaintiffs moved the court for a temporary injunction to restrain the defendants from interfering with the plaintiffs in the discharge of their duties as manager and clerk of the city. The circuit court denied the motion of the plaintiffs and, upon the bill of complaint and the exhibits and the affidavits filed with it, this Court on May 16, 1953, granted a temporary injunction, returnable before the Circuit Court of Harrison County.

On June 2, 1953, the plaintiffs filed their verified amended and supplemental bill of complaint and certain exhibits, the defendants filed their demurrer in writing and their verified answer to the amended and supplemental bill of complaint, and the plaintiffs filed their demurrer in writing to certain portions of the answer and their general

replication to that pleading. The defendants also moved the court to hear the testimony to be adduced by the plaintiffs to support the temporary injunction and the testimony to be adduced by the defendants in opposition to the injunction and in support of any motion of the defendants to dissolve it. The court denied this motion to hear the testimony in behalf of the respective parties in open court and made no specific ruling upon any of the demurrers. The evidence introduced in behalf of the respective parties consisted of depositions and numerous exhibits filed with the depositions. The respective parties stipulated in writing that the charter of the City of Clarksburg is a special charter granted by certain designated acts of the Legislature of West Virginia, that it is correctly and completely set forth in the Code of the City of Clarksburg, and that the applicable provisions are Sections 7, 9, 11, and 12 of the charter.

On August 28, 1953, at a special term the court heard the motion of the defendants to dissolve the temporary injunction upon the pleadings and the depositions filed by the respective parties and the former decrees in the case and, by decree entered on that date, dissolved the injunction previously awarded by this Court. From that decree this Court granted this appeal upon the petition of the plaintiffs. Leave to move to affirm the decree dissolving the injunction having been granted, the questions arising upon the motion of the defendants to dissolve and to affirm the decree of the circuit court were submitted to this Court for decision upon the oral arguments and the briefs in behalf of the respective parties on January 13, 1953.

The bill of complaint, upon which the preliminary injunction issued by this Court was granted, alleges that on May 4, 1953, at the first regular meeting of the council after the municipal election of April 21, 1953, the plaintiff Lockard was duly appointed city manager and the plaintiff Griffin was duly appointed city clerk by the vote of a majority of the duly elected and qualified councilmen of the city; that after the appointments of the plaintiffs

other appointments of officials were made by the council at that meeting; that after the adjournment of the meeting each of the plaintiffs undertook to enter upon the discharge of the duties required of him by the city charter; that the defendants refused to permit the plaintiffs to have access to their respective offices; that the defendant Wiseman caused the door to the room in which the office of city manager was located in the city building to be locked and kept locked for the purpose of excluding from it the plaintiff Lockard as city manager; that the defendant McCracken refused to permit the plaintiff Griffin, as the duly appointed clerk, to have access to the books and the papers in the office of the city clerk and caused some of the books and papers of the city clerk to be locked in an iron safe the combination of which was unknown to the plaintiff Griffin; that the defendants Wiseman and McCracken have pursued a course of conduct which interferes with and hinders the plaintiffs in the discharge of their duties and have given orders to certain persons not to recognize the plaintiff Lockard as city manager or the plaintiff. Griffin as city clerk; that the foregoing conduct of the defendants Wiseman and McCracken seriously interferes with the orderly discharge of the official business of the city; that it is necessary that the plaintiffs have the protection of a court of equity to permit them to proceed with the regular discharge of the duties of the offices to which they have been appointed by a majority of the nine members of the council; that the plaintiffs have no adequate and sufficient remedy at law; that they seek relief in equity for the purpose of avoiding a multiplicity of suits to determine separately the status of the several appointments of the plaintiffs and of other officials appointed by the council on May 4, 1953; and that irreparable injury will result to the City of Clarksburg and to the plaintiffs, as individuals and as public officials, unless the foregoing conduct of the defendants is restrained by a court of equity.

An exhibit filed with and as a part of the bill of complaint, which the plaintiffs assert constitutes the minutes of the meeting of May 4, 1953, recites that until eleven five

o'clock that evening the defendant Wiseman as the presiding officer of the meeting had recognized one hundred forty seven consecutive motions to adjourn; that councilmen Freeland, Policano, Mandeville, Harbert and Lyon had made numerous motions to appoint Lockard as city manager but that councilmen Scott, Stalnaker, Morrison and Reider continually moved to adjourn; that the presiding officer in each instance recognized the motion to adjourn and put that question to vote; that no vote was taken and no debate occurred on the motion to appoint Lockard between the motions for adjournment; that the motions to adjourn, which were defeated, continued until approximately eleven forty five o'clock; that at that time councilmen Freeland, Policano, Harbert, Mandeville and Lyon, constituting a majority "got up and stood to the side within the Council Chambers where they could talk and not be interrupted"; that councilman Policano was nominated and selected as temporary chairman; that on that question councilmen Freeland, Policano, Harbert, Mandeville and Lyon voted in the affirmative and councilmen Scott, Stalnaker, Morrison and Reider did not vote; that a motion was then made and seconded that "the chair be declared vacant"; that on that motion Scott, Stalnaker, Morrison and Reider did not vote, that the motion was adopted by the votes of Freeland, Policano, Harbert, Mandeville and Lyon and the temporary chairman "declared the chair vacant"; that successive motions were then made, seconded and adopted that Lockard be appointed city manager and that Griffin be appointed city clerk; that Freeland, Policano, Harbert, Mandeville and Lyon voted for each motion and Scott, Stalnaker, Morrison and Reider did not vote; that a notary public of Harrison County administered the oath of office to Griffin; that Griffin, as city clerk, administered the oath of office to Lockard; that Lockard, as city manager, then ordered the chief of police to "remove all from the council chambers who were not entitled to remain"; that "the former city manager J. Frank Wiseman, Mrs. Loretta G. McCracken, former clerk, and H. Laban White, former city attorney,

and councilmen Scott, Stalnaker, Morrison and Reider, chose to get up and leave the chambers"; that Lockard and Griffin and the remaining councilmen resumed their seats; that Lockard, as city manager, recommended the appointment of Griffin as city clerk and the appointment of certain other persons to other offices; that on motion made and seconded the recommendations were accepted and the persons recommended were appointed; that Freeland, Policano, Harbert, Mandeville and Lyon voted for the motion and Scott, Stalnaker, Morrison and Reider, being absent, did not vote; and that a motion to adjourn was then passed by unanimous vote.

The prayer of the bill of complaint is that the defendants be enjoined from interfering with the plaintiffs in the discharge of their duties as city manager and city clerk; that the defendant Wiseman be enjoined from locking and keeping locked the door of the office of the city manager in the city building; and that the denfendant McCracken be enjoined from locking and keeping locked the safe in the office of the city clerk for the purpose of excluding the plaintiff Griffin from access to the safe and the public records which are kept in it.

The amended and supplemental bill of complaint, which was filed on June 2, 1953, after the award of the preliminary injunction, incorporates and repeats the allegations of the bill of complaint and contains the additional allegations that the five members of the council who voted for the appointment of the plaintiff Lockard as city manager and the appointment of the plaintiff Griffin as city clerk were duly elected by a majority of the voters in their respective wards, that the votes cast for such councilmen were duly canvassed by the council and certificates of election, which are filed as exhibits with the amended and supplemental bill of complaint, were issued to the five councilmen so elected; that the five councilmen were duly sworn as such; and that the oaths of office of each of them and their affidavits, showing that they voted for the ap-

pointments of the plaintiffs, are filed as exhibits with the amended and supplemental bill of complaint.

The amended and supplemental bill of complaint also contains these additional allegations: "That the said defendants severally, by acting in conjunction and co-operating, are impairing the public rights in this that the public is entitled to have the important duties of the city manager and the city clerk discharged by officials duly and regularly elected to such positions separately, and the said defendants·by their unlawful conduct aforesaid are not permitting the public business to be discharged by these plaintiffs as duly appointed manager and clerk as aforesaid and, also, the acts and conduct of the said defendants necessarily are resulting in the impairment of the rights of these plaintiffs to enter upon the duties of the respective offices to which they have been appointed by the city council of the City of Clarksburg and therefore it is necessary for the plaintiffs to have the assistance of a court of equity in order that they may be permitted to proceed with the regular discharge of their duties of the offices to which they have been appointed by a majority of the city council of the City of Clarksburg; and further that the status of the plaintiffs in the offices to which they were duly appointed and qualified as aforesaid may be preserved until final determination of all matters affecting the legal and equitable rights of the parties hereto in the premises;".

The prayer of the amended and supplemental bill of complaint contains the prayer of the bill of complaint and in addition asks that upon final hearing a permanent injunction be granted.

By their joint and separate answer to the amended and supplemental bill of complaint the defendants deny the allegations of the amended and supplemental bill of complaint that at a regular meeting of the city council on May 4, 1953, or at any other time and place, the plaintiff Lockard was duly appointed city manager or the plaintiff Griffin was duly appointed city clerk, or that each of them took

the oath of office required by law and became qualified to enter upon the discharge of the duties of the city manager or the city clerk, or that each of the plaintiffs was duly appointed by a vote of a majority of the duly elected councilmen of the city at any regularly constituted meeting of the council. They allege that the plaintiff Lockard and the plaintiff Griffin are seeking and attempting, without authority of law, to intrude upon and usurp the function of city manager and city clerk; that the defendant Wiseman is the duly and legally appointed, qualified and acting city manager and the defendant McCracken is the duly and legally appointed, qualified and acting city clerk; that there has been no valid appointment of any successor to the defendant Wiseman as city manager and no valid appointment of any successor to the defendant McCracken as city clerk; that, under the provision of the city charter that all appointive employees of the city shall hold their respective employments until their respective successors shall have been chosen, the defendant Wiseman continues to hold the office of city manager and the defendant McCracken continues to hold the office of city clerk. They admit that the city charter provides for a council composed of nine members, one member to represent each of the nine wards of the city, but they deny that either Andrew J. Freeland or Fred Harbert is a duly qualified member of the council; and they allege that, under a provision of the city charter that no person shall be elected or remain a member of the city council who does not reside in the ward from which he is elected and who is not a freeholder of record in the City of Clarksburg, Freeland and Harbert, at the time of the municipal election in April, 1953, and on May 4, 1953, were not eligible for election as a member of the city council, or to take or hold that office, and that neither of them was then a freeholder of record in the city. They allege that on May 5, 1953, and since that date, the plaintiffs have sought to intrude upon and usurp the duties and the functions of city manager and city clerk; that prior to May 16, 1953, the defendants refused to permit the plaintiffs to have control of the offices

occupied and held by the defendants but they deny that access to such offices has been refused the plaintiffs or any other person seeking peaceably to enter them. They allege that neither of the defendants has in any manner recognized the right of the plaintiffs to the respective offices claimed by them and that, in refusing, prior to May 16, 1953, to permit the plaintiffs to assume the duties and discharge the responsibilities of the offices held by the defendants, their conduct in that respect has been pursuant to their sworn duty to discharge their respective duties as city manager and city clerk. They deny that their conduct and action since May 4, 1953, have interferred with the regular and orderly discharge of the official business of the city, or that any action of the defendants between May 4, 1953, and May 16, 1953, or since, has impaired any public right, or that the plaintiffs have any right to enter upon or exercise the duties of the respective offices which they claim, or that irreparable damage has resulted or will result to the City of Clarksburg and to the plaintiffs, either as individuals or as public officers, unless the defendants are enjoined by a court of equity, or that the plaintiffs have any status as public officers, either de jure or de facto, which should be preserved until a final determination of all matters affecting the legal and equitable rights of the parties to this suit. They also charge that any remedy available to the plaintiffs or either of them concerning their alleged appointments to the respective offices of city manager and city clerk exists at law and not in equity.

By their answer the defendants also allege that the meeting of the city council which convened at seven thirty o'clock on the evening of May 4, 1953, was attended by only seven duly elected and regularly constituted members of the council; that those members were Scott, Stalnaker, Lyon, Reider, Policano, Mandeville and Morrison; that about eleven fifteen o'clock on the night of May 4, 1953, the meeting was regularly and legally adjourned because of the absence of a quorum; that any action taken by any members of the council, other than Scott, Stalnaker,

Reider and Morrison in voting to adjourn the meeting, was void and of no legal effect; and that any meeting held or participated in only by the other members of the council, upon which the plaintiffs based their claim to the respective offices of city manager and city clerk, was wholly illegal and void.

The bill of complaint and the amended and supplemental bill of complaint are pure injunction bills and the prayer of each is solely for injunctive relief. The plaintiffs do not seek any equitable relief other than an injunction to protect the alleged right of each to the office which he claims and the injunction for which they pray is not merely ancillary to other relief which a court of equity has jurisdiction to grant. None of the pleadings filed in this suit alleges, and it does not appear from the evidence, that any proceeding at law has been instituted or is pending to determine the conflicting claims of the plaintiff Lockard and the defendant Wiseman to the office of city manager or the conflicting claims of the plaintiff Griffin and the defendant McCracken to the office of city clerk, or that any of the parties has invoked or will invoke any available legal remedy for that purpose.

The pleadings and the evidence, consisting of depositions and exhibits filed in behalf of the respective parties, disclose the occurrence of a series of unusual events between the regular municipal election on April 21, 1953, and the issuance of the preliminary injunction by this Court on May 16, 1953.

At the regular municipal election held on April 21, 1953, to select nine members of the council, five Republicans and four Democrats, according to the canvass of the votes and the declaration of the election returns, were elected members of the council to represent the various wards in the city and a certificate of the result of the election was issued to each of them. Each person to whom such certificate was issued subsequently took an oath of office as councilman from the ward in which, according to the election returns, he was elected and as such attended the

first regular meeting of the council following the election. This meeting convened at seven thirty o'clock in the evening of May 4, 1953. The five Republican members were Andrew J. Freeland from the second ward, Dominick A. Policano from the fourth ward, Fred Harbert from the fifth ward, Horace L. Mandeville from the sixth ward, and Vernon A. Lyon from the seventh ward; and the four Democratic members were John Scott from the first ward, Eugene F. Stalnaker from the third ward, W. E. Morrison from the eighth ward, and Paul Reider from the ninth ward. The defendant Wiseman, who had been appointed manager of the City of Clarksburg on May 1, 1951, and the defendant McCracken who had likewise been appointed city clerk of the City of Clarksburg on May 1, 1951, attended the meeting and the defendant Wiseman participated in it as city manager and the defendant McCracken acted as city clerk. The defendant Wiseman as city manager called the meeting to order, introduced or presented the various members of the council to the meeting, and acted as fairmen of the meeting.

Immediately after the meeting was organized one of the Democratic members made a motion that the defendant Wiseman be appointed city manager. This motion was defeated by a vote of five to four. The four Democrats voted for and the five Republicans voted against the motion. One of the Republican members then moved that the plaintiff Lockard be appointed city manager. Before this motion was acted upon or put to a vote a Democratic member made, and the presiding officer entertained, a motion that the meeting adjourn. The four Democratic members voted for and the five Republican members voted against the motion to adjourn which was defeated by a vote of five to four.

During the ensuing period of approximately three hours, or until about eleven o'clock that night more than one hundred motions to adjourn the meeting were made in almost unbroken succession by one or more members of the council. No other motion independent of or unrelated

to the question of adjournment or pertaining to any other or different matter or business was recognized or entertained by the defendant Wiseman who, as city manager, continued to act as the presiding officer. One record which the plaintiffs contend constitutes the minutes of the meeting and which, according to the testimony of some of the witnesses in behalf of the plaintiffs, correctly reports the proceedings of the meeting, indicates that there were one hundred forty seven motions to adjourn. From another record introduced by the defendants and which, according to the testimony of some of the witnesses produced in their behalf, is a correct report of the action taken at the meeting, the number of such motions was one hundred forty four. Each of these motions, except the final one, was defeated by a vote of five to four and in each instance the four Democratic members voted for and the five Republican members voted against the motion.

In the foregoing situation, sometime after eleven o'clock the five Republican members left their seats at the council table and withdrew to a section of the same room or chamber and formed a group a few feet from the table at which their regular seats were located. Wiseman, McCracken, and the four Democratic members were not invited to join or participate in the group and did not do so. They apparently remained in or near their usual seats. They did not hear all the discussion engaged in by the members of the group of the other five members but did observe some of the action taken by it. The group, by the unanimous vote of its five members, selected a temporary chairman, declared the office of chairman of the meeting to be vacant, and appointed the plaintiff Lockard as city manager and the plaintiff Griffin as city clerk. A notary public then administered an oath of office to Griffin and he in turn administered a similar oath to Lockard. After taking the oath Lockard acted as chairman of the group and directed the chief of police to remove from the meeting all persons not entitled to attend. The group accepted the recommendation of Lockard that Griffin be appointed city clerk and that certain persons be appointed to other

offices and by unanimous vote made the recommended appointments. It then adjourned.

Shortly before or shortly after the action of the group in appointing Lockard as city manager and Griffin as city clerk, the exact time not being clearly established, Wiseman, as presiding officer of the meeting, according to the testimony of some of the witnesses, ordered a roll call to determine whether a quorum of the council was present and, the five Republican members not having answered the call, which was once repeated, found that a quorum was not present and, on motion of one of the four Democratic members for which all of them voted, the meeting was adjourned. Other witnesses testified that the members of the group did not hear any roll call and that, with respect to a roll call, the minutes of the meeting introduced by the defendants are incorrect.

Following the adjournment by the four Democratic members, Wiseman and McCracken left the city building. Before leaving Wiseman locked the doors to the office of the city manager and, being absent from Clarksburg on May 5, did not return to the office until May 6. On the morning of May 5, after arriving at the city building and finding the office doors locked, Lockard, as city manager, directed that one of them be opened which was done by the use of force by some person or persons then present and, after this was done, Lockard entered the office. Griffin also came to the office of the city clerk on May 5 and Lockard and Griffin, claiming to be the city manager and the city clerk respectively, continued to come to the offices on each succeeding business day and undertook to discharge and in part discharged the respective duties of city manager and city clerk until the issuance of the preliminary injunction in this case on May 16, 1953. Since then they have had uninterrupted possession and control of the respective offices.

After Wiseman returned to the office of city manager on May 6 and McCracken returned to the office of city clerk on May 5 they likewise continued to come to the offices on each succeeding business day and, also claiming

to be the city manager and the city clerk respectively, undertook to discharge and in part discharged their respective duties as such until the award of the injunction. During this period Wiseman and McCracken told Lockard and Griffin that Wiseman was the city manager and that McCracken was the city clerk. Wiseman refused to recognize Lockard as city manager and refused to permit him to assume the duties of that office or to have access to some of the equipment and McCracken likewise refused to recognize Griffin as city clerk and refused to permit him to assume the duties of that office or to have access to some of the equipment and papers or to the safe in which certain articles and records of the city were kept. They did, however, permit them as citizens to enter and remain in the offices.

After the issuance of the preliminary injunction on May 16, 1953, the defendant Wiseman ceased to come to the office of city manager and has not since returned and the defendant McCracken, except when requested by the plaintiffs to come to the office of the city clerk, has been absent from that office. Since the award of the injunction the plaintiff Lockard has been acting as city manager and performing the duties of that office and the plaintiff Griffin has been acting as city clerk and performing the duties of that office without interference from the defendants or either of them.

On the evening of May 18, 1953, which appears to be the day of the next regular meeting of the council following the meeting of May 4, 1953, the five Republican members of the council held a meeting which was attended and participated in by Lockard as city manager and Griffin as city clerk and at that session, among other matters acted upon, a resolution which provided for the ratification and the confirmation of the appointments made on May 4, 1953, was adopted by the vote of the five Republican members of the council. Wiseman, McCracken, and the four Democratic members of the council were not present at this meeting and did not participate in it.

From the foregoing facts, as set forth in the pleadings in

their entirety and as shown by the testimony in this suit, the questions arising upon the motion to dissolve the preliminary injunction involve conflicting claims of the plaintiff Lockard and the defendant Wiseman to the office of city manager and conflicting claims of the plaintiff Griffin and the defendant McCracken to the office of city clerk. The bill of complaint, upon which the preliminary injunction was awarded by this Court, charges in substance that on May 4, 1953, at a regular meeting of the council the plaintiff Lockard was duly appointed city manager and the plaintiff Griffin was duly appointed city clerk by the vote of a majority of the duly elected and qualified councilmen of the city and that the defendants refused to permit the plaintiffs to have access to their respective offices and interfered with the plaintiffs in the discharge by them of the duties of the offices. The allegations of the bill of complaint are, in effect, that the plaintiffs, as appointees to and incumbents of the offices were not permitted to have access to or to discharge the duties of those offices, and it was upon the showing by the bill of complaint of the existence of that situation that the preliminary injunction was awarded. The allegations of the bill of complaint and the amended and supplemental bill of complaint, standing alone, do not set forth any dispute between the plaintiff Lockard and the defendant Wiseman involving the right of either to hold and occupy the office of city manager or any dispute between the plaintiff Griffin and the defendant McCracken involving the right of either to hold and occupy the office of city clerk or any claim of either defendant to either office but merely charge that the defendants interfered with the plaintiffs in the exercise of their duties and refused to permit them to have access to the offices.

It is well established that an injunction will be granted at the instance of an incumbent of an office to protect his possession and to prevent interference by a claimant to the office until the claimant has established his right to the office in a direct proceeding to determine the title to the office. 67 C. J. S., Officers, Section 76; *Hall* v. *Stepp*

*and Hatfield* v. *Lawson,* 105 W. Va. 487, 143 S. E. 153; *Allen* v. *Sellers,* 141 Ark. 206, 217 S. W. 257; *Arnold* v. *Hilts,* 52 Colo. 391, 121 P. 753, Ann. Cas. 1913E, 724; *Allen* v. *Wise,* 204 Ga. 415, 50 S. E. 2d 69; *Slater* v. *Blaize,* 204 La. 21, 14 So. 2d 872; *Yates* v. *Summers,* 177 Miss. 252, 170 So. 827. The allegations of the bill of complaint standing alone brought this case within the foregoing rule and justified the award of the preliminary injunction.

When, however, the defendants answered the bill of complaint and the amended and supplemental bill of complaint and denied the validity of the appointments of the plaintiffs and set forth the claim of the defendant Wiseman to the office of city manager and the claim of the defendant McCracken to the office of city clerk as prior appointees, and alleged that the defendant Wiseman had been duly appointed city manager and the defendant McCracken had been duly appointed city clerk on May 1, 1951, under the immediately preceding city administration; that the defendant Wiseman had rightfully entered into, held and possessed the office of city manager and the defendant McCracken had rightfully entered into, held and possessed the office of city clerk under prior appointments to those offices; that there had been no valid appointment of either plaintiff to either office; and that, under the provisions of the city charter, each defendant continued to hold the office to which each had been previously appointed until a successor to each had been duly appointed and qualified, the nature of the case, as presented by the bill of complaint and the amended and supplemental bill of complaint, was materially changed. It appears, from the pleadings in their entirety and the evidence introduced by the respective parties upon the hearing of the motion to dissolve the preliminary injunction, that the plaintiffs, at the time of the institution of this suit and the award of the preliminary injunction, were mere claimants to the offices in question instead of incumbents of such offices; that the defendants, when this suit was instituted, were either incumbents or prior possessors of or claimants to the offices; and that since then the de-

fendants have at least been claimants to the offices. The evidence does not show that either plaintiff, at or prior to the institution of this suit, was an incumbent in office or had complete, exclusive or undisputed possession of the office which he claims, or that he acquired such possession, at any time before the award of the preliminary injunction on May 16, 1953. The principle that an incumbent in office is entitled to an injunction to protect his possession until a claimant has established in a proper proceeding his right to the office, which was recognized and applied by this Court in the consolidated cases of *Hall v. Stepp and Hatfield v. Lawson,* 105 W. Va. 487, 143 S. E. 153, does not apply to the plaintiffs in the light of the established facts of this case. The plaintiffs have not shown that at or before the institution of this suit either of them had acquired complete, peaceable and undisputed possession of the office of city manager or the office of city clerk and, in consequence, they have not brought themselves within the foregoing principle.

The only questions arising upon the facts disclosed by the record in this suit involve the conflicting claims of the plaintiff Lockard and the defendant Wiseman to the office of city manager and the conflicting claims of the plaintiff Griffin and the defendant McCracken to the office of city clerk. These questions are not cognizable in a court of equity. For matters of this character there is an adequate legal remedy and such questions are cognizable only in a court of law. As a general rule an injunction will not be granted to restrain persons from acting as public officers for the reason that the legal remedy is ordinarily adequate to test the right to a public office. Note 7, L. R. A. 181; *Jones v. Granville,* 77 N. C. 280; *Sneed v. Bullock,* 77 N. C. 282; *Stone v. Wetmore,* 42 Ga. 601; *Huels v. Hahn,* 75 Wis. 468, 44 N. W. 507.

The principle is firmly established in this State and is recognized and applied in other jurisdictions that a court of equity has no jurisdiction, and will not interfere by injunction, to determine questions concerning the appointment or the election of public officers, or their right or

title to public office. In the early case of *Swinburn* v. *Smith,* 15 W. Va. 483, the opinion states that "it is well settled that where the controversy is the right to an office, such right being a pure legal right the legal remedies which the law affords in such a case oust all equitable jurisdiction." In *Alderson* v. *Commissioners,* 32 W. Va. 640, 9 S. E. 868, 5 L. R. A. 334, 25 Am. St. Rep. 840, this Court said: "No principle of the law of injunction is better settled, than that injunction does not lie to determine questions of appointment to public office and the title thereto, as they are of purely legal nature and cognizable only in courts of law." In *Kilpatrick* v. *Smith,* 77 Va. 347, a case involving the claims of various appointees to a board of school trustees, the Supreme Court of Appeals of Virginia held that injunction was not the proper remedy to determine the question of title to office; and subsequently, in *Brown* v. *Baldwin,* 112 Va. 536, 72 S. E. 143, the same court held that the validity of the appointment, election, or tenure of a public officer can not be questioned by a proceeding for an injunction and that a question which involves those matters, being of a purely legal nature, is cognizable only by courts of law.

A frequently quoted and widely recognized passage from 2 High on Injunctions, Fourth Edition, Section 1312, is in these words: "No principle of the law of injunctions, and perhaps no doctrine of equity jurisprudence is more definitely fixed or more clearly established than that courts of equity will not interfere by injunction to determine questions concerning the appointment or election of public officers or their title to office, such questions being of a purely legal nature, and cognizable only by courts of law. A court of equity will not permit itself to be made the forum for determining disputed questions of title to public offices, or for the trial of contested elections, but will in all such cases leave the claimant of the office to pursue the statutory remedy, if there be such, or the common law remedy by proceedings in the nature of *quo warranto.*" In 22 R. C. L., Public Officers, Section 113, the text contains these statements: "Courts of equity will not interfere, by injunction, to determine questions

concerning the appointment or election of public officers, or their title to office, and it does not matter whether the incumbent is an officer de jure or an officer de facto. Such questions are of a purely legal nature, and are cognizable only by courts of law. The right of an officer to hold a public office is not a property right which a court of chancery can protect by injunction, and an injunction will not lie, either against a removing officer or body to prevent the removal of a public officer, or against the person appointed in the place of an officer removed, to prevent him from exercising the duties of the office."

Additional authorities which sustain the principle that courts of equity lack jurisdiction, and will not interfere by injunction, to determine questions concerning the appointment or the election of public officers, or their right or title to public office are 42 Am. Jur., Public Officers, Section 144; 28 Am. Jur., Injunctions, Section 72, 19 Am. Jur., Equity, Section 143; 3 McQuillin, Municipal Corporations, Third Edition, 344, Section 12.92; 67 C. J. S., Officers, Section 76; *Davis* v. *Wilson*, 183 Ark. 271, 35 S. W. 1020; *Arnold* v. *Hilts*, 52 Colo. 391, 121 P. 753, Ann Cas. 1913E, 724; *Sweat* v. *Barnhill*, 170 Ga. 545, 153 S. E. 364; *Moore* v. *Dugas*, 166 Ga. 493, 143 S. E. 591; *Coleman* v. *Glenn*, 103 Ga. 458, 30 S. E. 297, 68 Am. St. Rep. 108; *Heffran* v. *Hutchins*, 160 Ill. 550, 43 N. E. 709, 52 Am. St. Rep. 353; *Delahanty* v. *Warner*, 75 Ill. 185, 20 Am. Rep. 237; *Landes* v: *Walls*, 160 Ind. 217, 66 N. E. 679; *Cochran* v. *McCleary*, 22 Iowa 75; *Brierly* v. *Walsh*, 299 Mass. 292, 12 N. E. 2d 827; *Doyle* v. *Ries*, 205 Minn. 82, 285 N. W. 480; *Yates* v. *Summers*, 177 Miss. 252, 170 So. 827; *Arnold* v. *Henry*, 155 Mo. 48, 55 S. W. 1089, 78 Am. St. Rep. 556; *State ex rel. Hawes* v. *Withrow*, 154 Mo. 397, 55 S. W. 460; *State ex rel. McCaffery* v. *Aloe*, 152 Mo. 466, 54 S. W. 494, 47 L. R. A. 393; *Johnston* v. *Carside*, 65 Hun. 208, 20 N. Y. Supp. 327; *Cella* v. *Davidson*, 304 Pa. 389, 156 A. 99; *Marshall* v. *Burke*, 158 Tenn. 133, 11 S. W. 2d 688; *Huels* v. *Hahn*, 75 Wis. 468, 44 N. W. 507. In *White* v. *Berry*, 171 U. S. 366, 18 S. Ct. 917, 43 L. ed. 199, the Supreme Court of the United States, quoting from *Sawyer's Case*, 124 U. S. 200, 8 S. Ct. 482, 31 L. ed. 402, expressed the view that a court of equity

has no jurisdiction over the appointment or the removal of public officers, and that the jurisdiction to determine the title to a public office belongs exclusively to courts of law and may be exercised by certiorari, writ of error or appeal, mandamus, prohibition, quo warranto, or information in the nature of quo warranto, according to the circumstances of the particular case and by the mode of procedure established by common law or by statute.

Under the foregoing authorities this Court will not adjudicate, in this suit, the sole object of which is injunctive relief, questions concerning the right of the contending parties to the offices which each of them seeks and to which each makes claim. Instead it leaves them free to invoke any available legal remedy in a proper proceeding at law which they may elect to pursue for determination of the questions in dispute between them.

The questions of the eligibility and the qualifications of Freeland and Harbert for election to or to hold the office of councilman, raised by the answers of the defendants and upon which they introduced evidence, likewise involve the right or title to public office. For that reason those questions are not considered or determined in this suit. They are not determinable in this proceeding for the additional reason that title to public office is not subject to collateral attack but may be attacked only in a direct proceeding for that purpose to which the persons claiming such title are parties. 67 C. J. S., Officers, Section 74; *Brierly* v. *Walsh,* 299 Mass. 592, 12 N. E. 2d 827.

The action of the circuit court in dissolving the preliminary injunction upon the hearing of the motion to dissolve was correct and the decree of August 28, 1953, which wholly dissolved the injunction should be affirmed.

Section 13, Article 5, Chapter 53, Code, 1931, provides that where an injunction is wholly dissolved the bill shall be dismissed with costs, unless sufficient cause be shown against such dismissal. This section applies to pure bills for injunction but not to proceedings in which an injunction is merely ancillary to other equitable relief. *Bunga-*

low *Gas Company* v. *Swanson,* 117 W. Va. 763, 188 S. E. 235; *Lewis, Hubbard and Company* v. *Pugh,* 115 W. Va. 232, 174 S. E. 880; *State* v. *Fredlock,* 52 W. Va. 232, 43 S. E. 153. As the bill of complaint and the amended and supplemental bill of complaint are pure bills for injunction and as the prayer of each is solely for injunctive relief instead of for other equitable relief as to which an injunction is merely ancillary, the bills and this suit are dismissed and costs are awarded in favor of the defendants against the plaintiffs.

The decree dissolving the preliminary injunction heretofore awarded by this Court is affirmed and the bills of complaint and this suit are hereby dismissed.

*Affirmed; suit dismissed.*